47 F.3d 1168
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
In re FISHELL, Debtors.
Richard L. FISHELL, Dorothy M. Fishell, Plaintiffs-Appellants,
v.
Robert SOLTOW, Rosalee Soltow, Defendants-Appellees.
 No. 94-1109.
 United States Court of Appeals, Sixth Circuit.
 Feb. 16, 1995.
 
 Before: ENGEL, KENNEDY AND SUHRHEINRICH, Circuit Judges.
 PER CURIAM.
 
 
 1
 Over the objection of the debtors, the Bankruptcy Court approved a compromise that settled an adversary proceeding between the debtors and their primary creditors, the Soltows. The debtors appealed to the District Court, arguing that the Bankruptcy Court abused its discretion in approving the compromise. The District Court first ruled that debtors lacked standing to appeal, but then proceeded to reach the merits of the appeal and affirmed the Bankruptcy Court, holding that the court had "apprised itself of the action's underlying facts and made an independent judgment as to whether the settlement was fair and equitable." (Dist.Ct.Op. at 10). The Debtors now appeal to this court. We affirm.
 
 I.
 
 2
 This case traces its roots back to 1986, when the Soltows loaned several hundred thousand dollars to the Fishells. The Fishells used the money to purchase a certain parcel of real estate and gave the Soltows a promissory note and a mortgage on the property. In 1988, after the Fishells defaulted on the loan, the Fishells and the Soltows entered into an amended agreement. As part of this agreement, the Fishells executed a new promissory note, which covered the original amount of the 1986 loan, as well as other interim, unsecured loans made by the Soltows to the Fishells. In return, the Soltows agreed not to start foreclosure proceedings and extended the time for repayment of the loan.
 
 
 3
 As part of the 1988 agreement, the Fishells also executed a warranty deed conveying the property to the Soltows. This deed was placed into escrow. According to the escrow agreement, if the Fishells defaulted again, the escrow agent was to release the deed to the Soltows, who would accept it as payment in full on the loan. If the Fishells did pay the loan in a timely manner, the escrow agent was to return the deed to them.
 
 
 4
 The Fishells did indeed default, and the escrow agent released the deed to the Soltows in March 1989. The Soltows then recorded the deed. In April 1989, however, the Fishells filed suit against the Soltows in Michigan state court, raising claims of fraud, usury, and equitable mortgage, and seeking to invalidate the warranty deed. In conjunction with the suit, the Fishells filed a notice of lis pendens. The Soltows responded to the suit and the filing of the notice by bringing a counterclaim for slander of title.
 
 
 5
 After the state suit had been pending for more than a year, the Fishells filed a Chapter 11 bankruptcy petition and removed the adversary proceeding to the Bankruptcy Court. After the bankruptcy proceeding had been pending for just over a year, the United States Trustee and several creditors moved to have the petition converted to a Chapter 7 proceeding. The Bankruptcy Court granted the motion, in part because it felt that it could no longer trust Mr. Fishell to comply with the law. The court then appointed a trustee to oversee the estate.
 
 
 6
 After investigating the adversary proceeding between the Fishells and the Soltows, the trustee negotiated a settlement of that litigation. The terms of the compromise provided that both the Fishells and the Soltows would dismiss their claims against each other and that the court would cancel the notice of lis pendens. The settlement also required the Soltows to pay $2000 into the estate. In return, the Soltows would keep the property as satisfaction for the loans they made to the Fishells. The trustee felt that this was the most expedient and fair means of resolving the dispute and would enable him to satisfy the claims of the primary pre-petition creditors, while still reserving sufficient funds in the estate to make substantial payments to the other creditors.
 
 
 7
 On June 12, 1992, the trustee filed a motion with the Bankruptcy Court asking it to approve the compromise. The Fishells objected to the compromise, but none of the creditors objected. On July 10, 1992, the Bankruptcy Court conducted a hearing on the trustee's motion and issued an opinion from the bench approving the settlement. The Fishells appealed the decision to the District Court, which concluded that the Fishells did not have standing to appeal and, even if they had standing, the Bankruptcy Court had not abused its discretion in approving the settlement. The Fishells now appeal to this court.
 
 II.
 A. Standing
 
 8
 Bankruptcy litigation, unlike other proceedings, has a special doctrine of appellate standing. Not all parties who are entitled to notice in the bankruptcy court are entitled to appeal the rulings of that court. In general, only parties to an adversary proceeding may appeal an order settling that litigation. Courts have, however, also created an exception allowing other "aggrieved" parties to appeal. In re El San Juan Hotel, 809 F.2d 151, 154 (1st Cir.1987). For purposes of the current appeal, the debtors are an aggrieved party only if they can show that a successful appeal would result in an estate whose assets exceed its liabilities. Id. at 155 n. 6.
 
 
 9
 In ruling on this issue, the District Court stated:
 
 
 10
 The debtors contend that if the trustee had prevailed in the adversary proceeding and had successfully defended the counterclaim, the litigation would have created an estate with assets in excess of liabilities. The debtors provide proof of the property's value and of Robert Soltow's claim. However, they provide no further information regarding the estate's other assets and liabilities, the cost of litigation, or other factors regarding the litigation's impact on the estate. The court finds that the debtors have not demonstrated that success in the adversary proceeding would have created an estate with assets in excess of liabilities. Accordingly, because the debtors have not shown that they are persons aggrieved by the bankruptcy court's order, the debtors lack appellate standing.
 
 
 11
 (Dist.Ct.Op. at 5).
 
 
 12
 The record filed with this court on appeal does not contain everything that was presented to the District Court. Based on the information available to us, we are unable to say that the District Court erred in resolving the standing issue against the Fishells. Even if that decision was erroneous, however, it is clear that the Fishells cannot succeed on the merits of their appeal.
 
 B. Approval of Compromise
 
 13
 The Federal Rules of Bankruptcy Procedure provide that
 
 
 14
 [o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.
 
 
 15
 Fed.R.Bankr.P. 9019. "The purpose of a compromise agreement is to allow the trustee and the creditors to avoid the expenses and burdens associated with litigating sharply contested and dubious claims.... The law favors compromise and not litigation for its own sake, ... and as long as the bankruptcy court amply considered the various factors that determined the reasonableness of the compromise, the court's decision must be affirmed." In re A & C Properties, 784 F.2d 1377, 1380-81 (9th Cir.) (citations omitted), cert. denied, 479 U.S. 854 (1986). We review a bankruptcy court's approval of a compromise under the abuse of discretion standard. Id. at 1380.
 
 The Supreme Court has declared that
 
 16
 [t]here can be no informed and independent judgment as to whether a proposed compromise is fair and equitable until the bankruptcy judge has apprised himself of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated. Further, the judge should form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise. Basic to this process in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of the litigation.
 
 
 17
 Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424-25 (1968). "A bankruptcy judge need not hold a mini-trial or write an extensive opinion every time he approves or disapproves a settlement. The judge need only apprise himself of the relevant facts and law so that he can make an informed and intelligent decision, and set out the reasons for his decision. The judge may make either written or oral findings; form is not important, so long as the findings show the reviewing court that the judge properly exercised his discretion." In re American Corporation, 841 F.2d 159, 163 (7th Cir.1987).
 
 
 18
 When evaluating the fairness and equity of a proposed compromise, the court should consider:
 
 
 19
 (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.
 
 
 20
 In re A & C Properties, 784 F.2d at 1381 (quoting In re Flight Transportation Corp. Securities Litigation, 730 F.2d 1128, 1135 (8th Cir.1984), cert. denied, 469 U.S. 1207 (1985)). Although it is preferable that these matters be addressed in the Bankruptcy Court's opinion, "[i]f, indeed, the record contain[s] adequate facts to support the decision of the trial court to approve the proposed compromises, a reviewing court would be properly reluctant to attack that action solely because the court failed adequately to set forth its reasons or the evidence on which they were based." Id. at 437.
 
 
 21
 While the Bankruptcy Court's opinion is not quite as specific on some of these issues as we would like, the record before that court clearly supports the approval of the compromise. The Bankruptcy Court had before it the record developed in the state court proceeding, as well as the extensive record developed before the Bankruptcy Court itself. The Bankruptcy Court held several hearings and decided several motions related to the instant proceeding. These include motions for summary judgment and a formal Rule 2004 examination of Richard Fishell. Accordingly, the Bankruptcy Court possessed a good deal of information and knowledge about the dispute between the Fishells and the Soltows and how that dispute affected the Fishells' other creditors.
 
 
 22
 An examination of the relevant factors supports the Bankruptcy Court's decision to approve the compromise. The first factor directs the court's attention to the merits of the adversary proceeding. In this case, there is not great merit to either the Fishells' or the Soltows' claims. The Fishells brought fraud, equitable mortgage, and usury claims against the Soltows arising out of the 1988 amended agreement. The fraud and equitable mortgage claims were highly doubtful, especially in view of Mr. Fishell's extensive experience in the real estate business. That leaves only the usury claims, which, while containing merit, were not for substantial sums of money, probably not what it would cost to litigate those claims. The Soltows' slander of title claim is likewise not very strong, although it might contain sufficient merit to make it costly to litigate. See, e.g., Patten Corp. v. Canadian Lakes Dev. Corp., 788 F.Supp. 975 (W.D.Mich.1991); Kauffman v. Shifman, 426 N.W.2d 819 (Mich.Ct.App.1988); Sullivan v. Thomas Organization, 276 N.W.2d 522 (Mich.Ct.App.1979). Thus, contrary to the Fishells' assertions, the positions of both parties lacked substantial merit, and the estate did not have a strong likelihood of winning much money.
 
 
 23
 The fact-intensive nature of the dispute also means that any litigation would be time-consuming and expensive. Even if the Fishells were completely victorious and succeeded in revoking the deed, the estate would still owe the Soltows more than half a million dollars. The Soltows had taken the deed in lieu of foreclosing on the land. Should the deed be invalidated, the Soltows would still have the equivalent of a mortgage securing their loans to the Fishells. In addition, as the Bankruptcy Court explicitly found, the Fishells have established a pattern of delaying legal proceedings, which would only add to the estate's expenses. The settlement allowed the Soltows to keep the deed, required them to pay $2000 to the estate, and left sufficient money in the estate to make substantial payments to the Fishells' other creditors. These factors support the conclusion that the compromise was the most efficient and economical way of resolving the suit between the Fishells and the Soltows.
 
 
 24
 The Fishells' primary argument on appeal is that the Bankruptcy court did not conduct an evidentiary hearing and did not explicitly inquire into many of the factual issues underlying the adversary proceeding. The court, however, is not required to go into the detail urged by the Fishells. The result of any such requirement would be virtually indistinguishable from a trial, which is the very thing the compromise was designed to avoid. The record before the Bankruptcy Court was sufficient to conclude that those factual matters would be time consuming to resolve and that, regardless of the resolution, the litigation expenses would drain more from the estate than was likely to be recovered. Accordingly, the Bankruptcy Court did not abuse its discretion in approving the compromise, and the District Court was correct to affirm that approval.
 
 III.
 
 25
 For the foregoing reasons, we AFFIRM the judgment of the District Court.