**In re: W. Clifford BARD and Ann Bard, Debtors.**

**W. Clifford Bard and Ann Bard, Plaintiffs–Appellants,**

**v.**

**Marvin A. Sicherman, Defendant–Appellee.**

Nos. 01–3006, 01–3029.

United States Court of Appeals, Sixth Circuit.

Oct. 15, 2002.

Before DAUGHTREY, GILMAN, and GIBSON,* Circuit Judges.

PER CURIAM.

The debtors, Ann and Clifford Bard, appeal from a decision of the district court affirming a bankruptcy court determination that the Chapter 7 trustee should be allowed, on behalf of the debtors, to enter into a compromise settlement of employment claims that Ann Bard had made against her former employer, Firstar Bank. The bank cross-appeals the decision of the district court denying its request to function as an appellee in the appeal from the bankruptcy opinion. For the reasons set out below, we conclude that the bankruptcy court did not abuse its discretion in approving the settlement. This obviates any need to decide whether the district court in erred in denying party status to Firstar.

*The Hon. John R. Gibson, United States Circuit Judge for the U.S. Court of Appeals for the Eighth Circuit, sitting by designation.

### FACTUAL AND PROCEDURAL BACKGROUND

The Bards initially filed a Chapter 13 bankruptcy petition in June 1994 that was converted into a proceeding under Chapter 7 of the Bankruptcy Code in September 1998. In the interim, Ann Bard also filed in federal district court a complaint against her former employer, Star Bank National Association, now known as Firstar Bank, N.A. That complaint alleged that Bard had injured her feet and had suffered $5 million in damages as a result of being forced to stand and walk upon the hard tile floors at the bank branch where she worked. Although the Bards failed to list the claim against Star Bank as an asset of the bankruptcy estate, the district judge before whom the action was pending recognized the ramifications of the claim and ordered that the bankruptcy court be informed of the pendency of the suit.

Upon conversion of the Chapter 13 bankruptcy proceeding into a Chapter 7 matter, the bankruptcy trustee became the real party-in-interest in the Bards' suit against the bank. In that capacity, the trustee, Marvin Sicherman, entertained a settlement offer from Firstar whereby the bank would deposit $92,500 into an account for payment of the lesser amount of: (a) the $92,500; or (b) "the sum of all allowed administrative expense claims and allowed priority and non-priority general unsecured claims against the Estate, including the applicable state and federal income tax liability incurred by the Estate in connection with the receipt of the Settlement Amount." In the event that the settlement amount exceeded the value of claims, taxes, and expenses to be paid, the proposed compromise called for any excess funds to be returned to Firstar.

The trustee sought bankruptcy court approval of the agreement that would allow payment of 100% of all creditors' claims, all taxes and expenses, and $10,000 to the Bards. The debtors, however, vehemently objected to the proposal, arguing that the trustee failed to seek expert assistance in reaching a fair settlement, failed to determine accurately the value of Ann Bard's employment claims, and failed to consider the interests of the debtors as residual claimants. Despite those objections, the bankruptcy judge concluded that the proposed settlement was fair and equitable to the bankruptcy estate and approved the trustee's motion to accept the compromise. After the debtors appealed, the district court affirmed the bankruptcy court's determination. Furthermore, the district judge ruled that Firstar was not a proper appellee in the proceedings and, consequently, ordered that the bank's filings in the matter be stricken. From those judgments, the Bards and Firstar now appeal.

### DISCUSSION

The Federal Rules of Bankruptcy Procedure specifically grant a trustee the authority to seek a compromise or settlement of claims available to the debtor or debtors, upon motion and after notice and a hearing. *See* Fed. R. Bankr.P. 9019(a). The very purpose of such a compromise agreement "is to allow the trustee and the creditors to avoid the expenses and burdens associated with litigating sharply contested and dubious claims." *In re A & C Props.*, 784 F.2d 1377, 1380–81 (9th Cir. 1986). Although our review of the bankruptcy court's approval of a compromise is only for an abuse of the discretion accorded the bankruptcy judge, *see id.*, the bankruptcy court is charged with an affirmative obligation to apprise itself "of all facts necessary to evaluate the settlement and make an 'informed and independent judgment'" as to whether the compromise is

fair and equitable. *LaSalle Nat'l Bank v. Holland (In re Amer. Reserve Corp.)*, 841 F.2d 159, 162–63 (7th Cir.1987) (quoting *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968)).

The United States Supreme Court has instructed bankruptcy courts engaged in making such determinations to "form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise." *TMT Trailer Ferry, Inc.*, 390 U.S. at 424. The federal courts of appeal have in turn implemented this directive by considering:

(a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*Drexel v. Loomis*, 35 F.2d 800, 806 (8th Cir.1929). *See also e.g., Christo v. Padgett*, 223 F.3d 1324, 1335 (11th Cir.2000), *cert. denied*, 531 U.S. 1191, 121 S.Ct. 1190, 149 L.Ed.2d 106 (2001); *Arden v. Motel Partners (In re Arden)*, 176 F.3d 1226, 1228 (9th Cir.1999); *Jeremiah v. Richardson*, 148 F.3d 17, 23 (1st Cir.1998); *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir.1996); *Conn. Gen. Life Ins. Co. v. United Cos. Fin. Corp. (In the Matter of Foster Mortgage Corp.)*, 68 F.3d 914, 917 (5th Cir.1995); *In re Flight Transp. Corp. Sec. Litig.*, 730 F.2d 1128, 1135 (8th Cir. 1984).

In this case, the bankruptcy court meticulously analyzed each of these relevant factors prior to approving the compromise request. Nevertheless, the debtors now advance arguments against that decision, contending that the bankruptcy judge did not give proper credence to positions taken by the Bards and that the court failed to accord sufficient weight to the impact of the settlement upon the debtors. These assertions, however, are without merit.

First, the Bards claim that the trustee offered no expert testimony on how to assess the value of the employment claims made by them against Firstar and that, consequently, the bankruptcy court should have credited the opinions proffered by the debtors' expert, Robert F. Sweeney, Jr. According to Sweeney, the probability of Ann Bard succeeding on the liability aspects of her employment claims was 75 percent. Moreover, claimed Sweeney, a jury would most likely assess damages in the case in an amount between $1 million and $4 million, making the lowest reasonable settlement offer $750,000. Although the trustee did not offer expert testimony of his own to dispute the written opinion of Sweeney, Sicherman correctly explained that the lack of assets in the bankruptcy estate precluded him from procuring such information. Nevertheless, the trustee did consult with the attorneys for both the plaintiffs and the defendants in the employment suit and reasonably concluded that the Bards' prospects for a successful resolution of the litigation were much less favorable than Sweeney led them to believe.

All parties agree that Ann Bard's lost wages alone that resulted from Firstar's employment decisions totaled approximately $115,000, which exceeds the compromise offer by more than $20,000. As noted by the bankruptcy judge, however, other factors presented by the disability claim justified an agreement to settle for a certain, although reduced, monetary recovery. In discussing the litigation, the judge stated:

> This lawsuit includes claims under the [Americans With Disabilities Act], which is an evolving area of the law as witnessed by recent Supreme Court decisions. In addition to the legal complexities there are numerous factual complexities arising out of the multiple interactions that gave rise to this dispute in the first place. Additionally, the parties have conducted the lawsuit in a manner that treats it as complex with multiple issues having been contested as the case has gone along. The lawsuit has been pending since 1996 and is now at the summary judgment phase. If summary judgment is granted in favor of Firstar, there will be no recovery at all for the creditors absent reversal on appeal. If the case survives summary judgment, the matter will have to be set for trial. The trial will require the Debtors' attendance from their present home in Florida and may well require expert witnesses. The Trustee does not have funds in the estate to pay for these costs, and there was no evidence that the Debtors will be able to fund the expenses. If the Debtors win at trial, Firstar has promised to appeal. In either event, a resolution from trial court judgment through appeal is likely to take years.

In fact, although the Bards viewed the case as involving a claim worth up to $4 million, Firstar adhered to its belief that the bank would prevail upon summary judgment and that the plaintiffs in the matter would receive absolutely no recovery.

Not only was the lack of expert testimony on the value of the employment claims not fatal to the trustee's position concern-

ing the proposed settlement, but the trustee and the bankruptcy court also engaged in exactly the type of reflective, detailed analysis of the Bards' lawsuit that was required. In examining the chances that the plaintiffs would succeed in the lawsuit, the trustee and the bankruptcy judge noted:

> (1) Firstar's pending motion for summary judgment on the merits, (2) a determination by the Equal Employment Opportunity Commission that Ms. Bard's claim lacks merit, (3) [doubts over] the characterization of Ms. Bard's condition as a disability under applicable law, (4) factual debates over whether Firstar offered Ms. Bard reasonable accommodation for her alleged disability, and (5) whether there is sufficient evidence that Ms. Bard was told she was on a promotion track.

Clearly, none of these specified considerations, in isolation, justify a conclusion that the lawsuit was necessarily and completely without merit. In combination, however, they establish that the bankruptcy court did not abuse its discretion in determining that the first factor listed in the *Drexel* analytical framework—the probability of success in the litigation—weighed in favor of ratifying the settlement offer.

Similarly, the court's recognition of the expense, inconvenience, and delay inherent in any trial of the employment dispute, and of the interest of the creditors in receiving prompt and complete payment of their claims, supports the ultimate conclusion of the bankruptcy judge to grant the motion to accept the compromise. Even the fact that Firstar is financially able to satisfy any judgment rendered against it, a consideration that weighs *against* compromise, does not, therefore, serve to tilt the balance in favor of the position advocated by the Bards.

Although most courts addressing similar issues do not explicitly focus on the interests of the *debtor* in deciding whether compromise agreements were properly approved, the Bards insist that such considerations are essential and would militate in this case against ratification of the proposed agreement. In fact, however, the bankruptcy court's ruling did include just such an analysis of the effect of a settlement on the debtors. Specifically, the bankruptcy judge stated:

> The Debtors' interest is somewhat divided. If the compromise is approved, they will promptly receive $10,000 for their exemption. The only way they will potentially get more money, however, is by continuing with the lawsuit, overcoming the summary judgment motion, winning at trial, and defending the verdict on appeal. Given that the Debtors prefer to go forward and roll the dice to see if they can get more than $10,000, they argue that this factor weighs against approving the compromise. The Court accepts their position that this factor weighs against the compromise, even though they will receive some funds if the settlement is approved. While the Court does consider the Debtors' interest as a legitimate factor, the Court gives it less weight than the other factors.

> After considering and balancing all of the facts and circumstances discussed above, the Court concludes that the proposed compromise meets the fair and equitable standard because of the uncertainty of the outcome if the Litigation proceeds in the District Court, the certainty of payment in full to creditors if the compromise is [approved], the uncertainty attendant to how the Litigation would be pursued, and the fact that the settlement will result in some recovery for the Debtors themselves. While the Court does understand that the Debtors

would prefer to give up the certainty of that payment for the uncertainty of a possible larger verdict, that factor does not outweigh the factors that favor the compromise.

Thus, despite the Bards' protestations that their interests were not considered by the bankruptcy judge, the bankruptcy court's ruling in this matter does make clear that all relevant factors *and* the interests of the debtors themselves were included in the court's decision-making. Without question, the Bards hoped to receive a significantly larger share of any lawsuit proceeds than the "mere" $10,000 exemption payment they will net under the agreement. In reaching its decision, however, the bankruptcy court recognized that any recovery at all for the Bards was far from a certainty. In order to protect the interests of the creditors, of the trustee, and even of the debtors themselves, therefore, the court exercised its discretion to approve the settlement offer presented. Nothing in the record before this court on appeal indicates that the challenged ruling constitutes an abuse of that discretion. The debtors' challenge to the approval of the compromise is thus without merit.

### CONCLUSION

In approving the trustee's request to compromise and settle the Bards' employment claims against Firstar, the bankruptcy court took note of the fact that success by the debtors in that litigation could result in greater financial gain for the Bards than was possible under the proposed settlement. The bankruptcy judge also recognized, however, that other factors affected the decision to be rendered. First, the debtors were far from assured that they would ultimately succeed on the merits of their claims. Moreover, even if such success were forthcoming, Firstar promised to appeal any resolution granting relief to the Bards, thus further delaying the possible payment to creditors who had, at that point, already waited more than five years for reimbursement from the debtors. Concern for the creditors, especially in light of the speculative nature of any return to the otherwise barren bankruptcy estate, led the court to approve the agreement that allowed for complete repayment to creditors, satisfaction of all administrative expenses, and payment of an additional $10,000 to the debtors themselves. Although the compromise may not have been the most advantageous settlement available, given the unique circumstances of this case, the bankruptcy court clearly did not abuse its discretion in approving that agreement.

For these reasons, we AFFIRM the judgment of the district court upholding the ruling of the bankruptcy court in this matter. It appears to us that this result renders moot any cross-appeal by Firstar Bank.