*By order of the Bankruptcy Appellate Panel, the precedential effect
of this decision is limited to the case and parties pursuant to 6th
Cir. BAP LBR 8013-1(b). See also 6th Cir. BAP LBR 8010-1(c).*

File Name: 05b0001n.06

**BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT**

| | |
|---|---|
| In re: HAVEN, INC., | ) |
| | ) |
| Debtor. | ) |
| | ) |
| | ) |
| PORTER DRYWALL CO. INC., | ) |
| | ) |
| Appellant, | ) |
| | ) |
| v. | )  No. 04-8058 |
| | ) |
| HAVEN, INC., OHIO SAVINGS BANK, and | ) |
| OFFICIAL COMMITTEE OF UNSECURED | ) |
| CREDITORS OF HAVEN, INC., | ) |
| | ) |
| Appellees. | ) |
| | ) |

Appeal from the United States Bankruptcy Court
for the Southern District of Ohio, Eastern Division
Case No. 02-65940

Argued: February 2, 2005

Decided and Filed: April 7, 2005

Before: COOPER, LATTA, and WHIPPLE, Bankruptcy Appellate Panel Judges.

———————————

**COUNSEL**

**ARGUED:** Robert J. Morje, Columbus, Ohio, for Appellant. Guy R. Humphrey, CHESTER,
WILLCOX & SAXBE, Columbus, Ohio, for Appellees. **ON BRIEF:** Robert J. Morje, Columbus,
Ohio, for Appellant. Guy R. Humphrey, CHESTER, WILLCOX & SAXBE, Columbus, Ohio,
Yvette A. Cox, BAILEY & CAVALIERI, Columbus, Ohio, Susan L. Rhiel, RHIEL &
ASSOCIATES, Columbus, Ohio, for Appellees.

---

**OPINION**

---

MARY ANN WHIPPLE, Bankruptcy Appellate Panel Judge. Porter Drywall Co. Inc. ("Porter") appeals an order approving a compromise between Debtor, Haven, Inc. ("Haven") and Ohio Savings Bank ("OSB"). The settlement related to an adversary proceeding Haven brought against OSB and Porter seeking to avoid OSB's mortgage on the sale proceeds of certain real property. Pursuant to the bankruptcy court's order approving the compromise, only Haven and OSB received the proceeds of sale. Although Porter also held a lien on the proceeds, it was not a party to the compromise and objected to its approval. For the reasons that follow, the Panel concludes that the order on appeal should be **REVERSED**.

## I. ISSUE ON APPEAL

The issue presented is whether the bankruptcy court abused its discretion when it approved the compromise between Haven and OSB over Porter's objection.

## II. JURISDICTION AND STANDARD OF REVIEW

A bankruptcy court's order approving a compromise is "final," *Lockwood v. Snookies, Inc. (In re F.D.R. Hickory House, Inc.)*, 60 F.3d 724, 726 (11th Cir. 1995), and may, therefore, be appealed as of right. 28 U.S.C. § 158(a)(1). The United States District Court for the Southern District of Ohio has authorized appeals to the Bankruptcy Appellate Panel, and neither party has timely elected to have this appeal heard by the district court. 28 U.S.C. §§ 158(b)(6), (c)(1). Accordingly, the Panel has jurisdiction to decide this appeal.

A bankruptcy court's decision "authorizing the trustee in bankruptcy to enter into a compromise of creditors' claims rests in the sound discretion of the [bankruptcy] judge. A reviewing

2

court will not disturb or set aside such a compromise unless it obviously achieves such an unjust result as to amount to an abuse of discretion." *Mach. Terminals, Inc. v. Woodward (In re Albert-Harris, Inc.)*, 313 F.2d 447, 449 (6th Cir. 1963) (citations omitted). "Although our review of the bankruptcy court's approval of a compromise is only for an abuse of the discretion accorded the bankruptcy judge, the bankruptcy court is charged with an affirmative obligation to apprise itself 'of all facts necessary to evaluate the settlement and make an "informed and independent judgment"' as to whether the compromise is fair and equitable." *Bard v. Sicherman (In re Bard)*, 49 Fed. Appx. 528, 530 (6th Cir. 2002) (quoting *LaSalle Nat'l Bank v. Holland (In re Am. Reserve Corp.)*, 841 F.2d 159, 162-63 (7th Cir. 1987) (quoting *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424, 88 S. Ct. 1157 (1968), and citing *Martin v. Kane (In re A & C Props.)*, 784 F.2d 1377, 1380-81 (9th Cir. 1986))); *accord*, *e.g.*, *Fishell v. Soltow (In re Fishell)*, 47 F.3d 1168 (6th Cir. 1995) (unreported table decision) (quoting *TMT Trailer Ferry*, 390 U.S. at 424-25); *Reynolds v. Comm'r*, 861 F.2d 469, 473 (6th Cir. 1988) (citing *Am. Reserve Corp.*, 841 F.2d at 162-63), *available at* 1995 WL 66622, at \*\*3. Generally, a court "abuses its discretion only when it relies upon clearly erroneous findings of fact or when it improperly applies the law or uses an erroneous legal standard." *Fleischut v. Nixon Detroit Diesel, Inc.*, 859 F.2d 26, 30 (6th Cir. 1988). "'The purpose of a compromise agreement is to allow the trustee and the creditors to avoid the expenses and burdens associated with litigating sharply contested and dubious claims . . . . The law favors compromise and not litigation for its own sake, . . . and as long as the bankruptcy court amply considered the various factors that determined the reasonableness of the compromise, the court's decision must be affirmed.'" *Fishell*, 1995 WL 66622, at \*\*2 (quoting *A & C Props.*, 784 F.2d at 1380-81).

## III. FACTS

On or about March 9, 2001, Haven executed a mortgage in favor of OSB with respect to certain real property located in the Sage Creek Subdivision in Delaware County, Ohio (the "Property"). The mortgage was properly signed, witnessed, and notarized but, when the mortgage was recorded on March 30, 2001, the signature page from the Construction Loan Agreement between Haven and OSB was attached in lieu of the mortgage's signature page. That page did not

bear the signatures of witnesses or a notarial acknowledgment. On or about June 6, 2002, Haven executed a mortgage on the Property in favor of Porter, which was recorded on June 10, 2002. At some point, Daryl Glover, doing business as Q & T Stucco and Stone ("Glover"), filed a notice asserting a mechanic's lien on the Property.

On December 2, 2002, Haven filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. On March 10, 2003, the bankruptcy court entered an order approving the sale of the Property free and clear of liens, claims, and encumbrances, with liens, claims, and encumbrances to transfer to the sale proceeds. The Property was sold, and the net proceeds (after the payment of real estate taxes, recording fees, and other closing and settlement costs) were $335,729.18, which funds were placed in an attorney's escrow account. The balance of OSB's mortgage loan as of February 3, 2003, was $308,841.59. The balance of Porter's mortgage loan as of April 1, 2002, was $20,122.50.

On March 20, 2003, Haven filed a complaint against OSB, Porter, and Glover, seeking to avoid OSB's mortgage on the Property, alleging an improper acknowledgment. The complaint sought to preserve the avoided mortgage for the benefit of the estate, so that the other defendants' interests in the Property would be subordinate to that of the debtor in possession as successor to OSB. On June 26, 2003, Haven filed a motion for summary judgment and, on July 23, 2003, it filed an amended motion for summary judgment and OSB filed a cross-motion for summary judgment.

The bankruptcy court did not decide the summary judgment motions. Instead, on March 24, 2004, Haven filed a motion for approval of a compromise with OSB. The settlement, as interpreted by the parties, provides for the bankruptcy estate to receive the first $120,000 of the sale proceeds with the balance to be disbursed to OSB up to the balance of its mortgage and then to Porter up to the balance of its mortgage and then to Glover. The settlement further provides that "OSB does not anticipate that there will be any proceeds remaining after paying $120,000.00 to the Bankruptcy Estate and paying the balance of its Mortgage Loan." On April 12, 2004, Porter filed a memorandum in opposition to the motion for approval of the compromise, asserting that it was not a party to the settlement and that its mortgage had priority over both OSB and the bankruptcy estate.

4

The bankruptcy court conducted a hearing on approval of the compromise on June 7, 2004, at which the Official Committee of Unsecured Creditors (the "Committee") supported the settlement. The court did not make any oral findings of fact or conclusions of law but, on June 30, 2004, it entered an order approving the settlement, which found that "the Compromise is in the best interests of the Debtor's creditors and its bankruptcy estate and is fair and equitable." Porter timely filed a notice of appeal on July 7, 2004. The bankruptcy court denied a stay pending appeal on August 2, 2004, and the proceeds of the Property have now been disbursed in accordance with the settlement according to Haven's and Porter's attorneys' statements at oral argument before the Panel.

## IV. DISCUSSION

Rule 9019(a) of the Federal Rules of Bankruptcy Procedure provides: "On motion by the trustee and after notice and a hearing, the court may approve a compromise and settlement." A Chapter 11 debtor in possession has all of the rights, powers and duties of a trustee. 11 U.S.C. § 1102. The rule offers no guidance on the criteria to be used in evaluating whether a compromise and settlement should be approved. The Sixth Circuit has held, however, that "[t]he bankruptcy court . . . is obligated to weigh all conflicting interests in deciding whether the compromise is 'fair and equitable,' considering such factors as the probability of success on the merits, the complexity and expense of litigation, and the reasonable views of creditors." *Bauer v. Commerce Union Bank*, 859 F.2d 438, 441 (6th Cir. 1988); *accord*, *e.g.*, *Bard v. Sicherman (In re Bard)*, 49 Fed. Appx. 528, 530 (6th Cir. 2002); *Reynolds v. Comm'r*, 861 F.2d 469, 473 (6th Cir. 1988) (citing *Protective Comm. of Indep. Stockholders for TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424, 88 S. Ct. 1157 (1968)). More explicit guidance may be found in the unreported opinion in the *Bard* case:

> The United States Supreme Court has instructed bankruptcy courts engaged in making such determinations to "form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise." The federal courts of appeal have in turn implemented this directive by considering:

5

(a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*Bard*, 49 Fed. Appx. at 530 (quoting *TMT Trailer Ferry*, 390 U.S. at 424, and citing *Drexel v. Loomis*, 35 F.2d 800, 806 (8th Cir. 1929)) (other citations omitted); *accord*, *e.g.*, *Fishell v. Soltow (In re Fishell)*, 47 F.3d 1168 (6th Cir. 1995) (unreported table opinion) (quoting *Martin v. Kane (In re A & C Props.)*, 784 F.2d 1377, 1381 (9th Cir. 1986)), *available at* 1995 WL 66622, at **3. As for the analysis and findings of fact required, a panel of the Sixth Circuit has adopted the procedure mandated by the Seventh Circuit:

"A bankruptcy judge need not hold a mini-trial or write an extensive opinion every time he approves or disapproves a settlement. The judge need only apprise himself of the relevant facts and law so that he can make an informed and intelligent decision, and set out the reasons for his decision. The judge may make either written or oral findings; form is not important, so long as the findings show the reviewing court that the judge properly exercised his discretion."

. . . .

. . . Although it is preferable that these matters be addressed in the Bankruptcy Court's opinion, "[i]f, indeed, the record contain[s] adequate facts to support the decision of the trial court to approve the proposed compromises, a reviewing court would be properly reluctant to attack that action solely because the court failed adequately to set forth its reasons or the evidence on which they were based."

*Fishell*, 1995 WL 66622, at **3 (quoting *LaSalle Nat'l Bank v. Holland (In re Am. Reserve Corp.)*, 841 F.2d 159, 163 (7th Cir. 1987); *TMT Trailer Ferry*, 390 U.S. at 437).

Although the bankruptcy court in this case did make a determination on the ultimate issue that "the Compromise is in the best interests of the Debtor's creditors and its bankruptcy estate and

6

is fair and equitable under the factors set forth in *Drexel v. Loomis*," the order approving the compromise does not make any specific findings of fact regarding any of those four factors. Moreover, the bankruptcy court made no oral findings of fact at the hearing on approval of the compromise. Thus, the Panel must determine if "the record contain[s] adequate facts to support the decision of the trial court." *Id.*

As for the first prong of the *Drexel* test, the risk that OSB would prevail in the adversary proceeding does indicate the prudence of a compromise. Ohio law permits the recordation of instruments only if they are "properly executed." Ohio Rev. Code § 5301.25(A). Thus, "an improperly executed mortgage does not put a subsequent bona fide purchaser on constructive notice." *Simon v. Chase Manhattan Bank (In re Zaptocky)*, 250 F.3d 1020, 1028 (6th Cir. 2001). A trustee or debtor in possession is by statute a bona fide purchaser "without regard to any knowledge." 11 U.S.C. § 544(a)(3). Accordingly, an improperly executed Ohio mortgage is avoidable under § 544(a) of the Bankruptcy Code. *E.g.*, *Suhar v. Burns (In re Burns)*, 322 F.3d 421, 427 (6th Cir. 2003) (citing *Zaptocky*, 250 F.3d at 1027-28). Under Ohio law, the mortgagor's signing of a mortgage "shall be acknowledged by the . . . mortgagor . . . before a judge or clerk of a county of record in this state, or a county auditor, county engineer, notary public, or mayor." Ohio Rev. Code § 5301.01(A).[1] An improperly notarized instrument is "improperly executed" within the meaning of Section 5301.25(A) of the Ohio Revised Code, *Mortgage Elec. Registration Sys. v. Odita*, 822 N.E.2d 821, 825 (Ohio Ct. App. 2004); *Majestic Homes, Inc. v. Figgers*, No. 3831, 1985 WL 3998, at *2 (Ohio Ct. App. Nov. 27, 1985), and is thus avoidable under § 544(a) of the Bankruptcy Code.

---

[1] At the time the OSB mortgage was signed and recorded, Section 5301.01 also required the signatures of two witnesses, but Section 5301.234 of the Ohio Revised Code (which has been invalidated as violative of the Ohio constitution, *In re Nowak*, 820 N.E.2d 335 (Ohio 2004); *Kovacs v. First Union Home Equity Bank (In re Huffman)*, 369 F.3d 972 (6th Cir. 2004)) purported to negate that requirement. In any event, OSB's mortgage was properly witnessed, but the mortgage signature page, containing the witnesses' signatures as well as the acknowledgment, was replaced by the signature page from the Construction Loan Agreement when the instrument was recorded.

7

The parties stipulated that OSB's mortgage was properly executed in the sense that it was properly signed, witnessed, and notarized. Nevertheless, the instrument actually submitted for recordation did not show that it was properly executed because the signature page attached to the mortgage did not contain the signatures of witnesses or a notarial acknowledgment. There does not appear to be any Ohio decision addressing whether a mortgage not reflecting the acknowledgment may be recorded even though the mortgage was actually acknowledged: if the courts of Ohio would hold that the omission makes it improper to record the mortgage, the consequences would likely be the same as if OSB's mortgage had not been notarized at all and Haven would prevail; if Ohio law permits the recordation of the instrument without the acknowledgment (so long as the execution of the instrument was acknowledged), OSB would prevail.

Turning to the other factors to be considered in determining whether to approve a compromise, as the adversary proceeding relates to the disposition of the proceeds of the sale of the Property and the funds were then held in escrow, the collection of any judgment presented no difficulties. The adversary proceeding was not complex. Moreover, because Haven and OSB had filed cross-motions for summary judgment and those motions had been fully briefed, the prosecution of the litigation to its conclusion would involve little or no additional "expense, inconvenience and delay." *See Martinson v. Michael (In re Michael)*, 183 B.R. 230, 239 (Bankr. D. Mont. 1995) (denying approval of settlement where trustee was "almost certain to prevail," trustee's victory could be enforced by selling property, and material facts were uncontroverted, law had already been researched, and litigation was "near its end").

As for "the paramount interest of the creditors and a proper deference to their reasonable views in the premises," *Bard*, 49 Fed. Appx. at 530, the Committee supported the settlement. But the court must also consider the interests of secured creditors, including the defendants in the adversary proceeding. Pursuant to the compromise, the proceeds of the Property have been completely disbursed to Haven and OSB when Porter holds, at a minimum, a second priority interest in the funds, and the adversary proceeding in which Porter asserted those rights has been dismissed with prejudice. Clearly, the compromise was not in Porter's interests.

8

Moreover, Ohio law dictates that, if Haven were to prevail in avoiding OSB's mortgage as improperly executed, Porter's mortgage would move into first position under Ohio law; and § 551 of the Bankruptcy Code does not change that result. Section 551 provides that "[a]ny transfer avoided under section . . . 544 . . . of this title . . . is preserved for the benefit of the estate but only with respect to property of the estate." The statute "puts the estate in the shoes of the creditor whose lien is avoided. It does nothing to enhance (or detract from) the rights of that creditor viz-a-viz other creditors." *Carvell v. Bank One, Lafayette, N.A. (In re Carvell)*, 222 B.R. 178, 180 (B.A.P. 1st Cir. 1998). Section 551 thus "prevents junior lienors from improving their position at the expense of the estate when a senior lien is avoided," *id.* (quoting H.R. Rep. No. 95-595, at 376 (1977); S. Rep. No. 95-989, at 91 (1978)), but does not confer on a trustee any greater rights than were held by the secured creditor prior to the avoidance, *e.g.*, *Barnett Bank of S. Fla., N.A. v. Weitzner (In re Kavolchyck)*, 164 B.R. 1018, 1024 (S.D. Fla. 1994); *Connelly v. Marine Midland Bank, N.A.*, 61 B.R. 748, 750 (W.D.N.Y. 1986); *Walker v. Elam (In re Fowler)*, 201 B.R. 771, 781 (Bankr. E.D. Tenn. 1996); *Tenn. Mach. Co. v. Appalachian Energy Indus., Inc. (In re Appalachian Energy Indus., Inc.)*, 25 B.R. 515, 517 (Bankr. M.D. Tenn. 1982). Accordingly, these and other cases hold that, when a trustee avoids an unperfected security interest, he or she steps into the shoes of the creditor and so holds an unperfected security interest, which is subordinate to later, perfected security interests.

As explained above, OSB's mortgage may be avoidable by Haven, which (as the debtor in possession) has the status of a bona fide purchaser without notice. However, § 5301.25(A) of the Ohio Revised Code provides that an improperly executed mortgage is unenforceable only against one without "knowledge of the existence of the instrument." The courts of some states interpret similar statutes to hold that subsequent lienholders have actual knowledge by virtue of the fact that the prior mortgage was, in fact, recorded, albeit improperly. *See*, *e.g.*, *Rogan v. America's Wholesale Lender (In re Vance)*, 99 Fed. Appx. 25 (6th Cir. 2004) (discussing *State St. Bank & Trust Co. v. Heck's, Inc.*, 963 S.W.2d 626, 630 (Ky. 1998)). However, the courts of Ohio hold that a defectively executed mortgage gives neither constructive nor actual notice: "A defectively executed mortgage is not entitled to record, and even if it is recorded, the defective mortgage is treated as though it has not been recorded." *Odita*, 822 N.E.2d at 825 (citation omitted); *accord*,

9

*e.g.*, *Priority Mtg. & Inv. Co. v. Flesariu*, 2 Ohio Law Abs. 760 (Ohio Ct. App. 1924); *see Figgers*, 1985 WL 3998, at *2. The Ohio Court of Appeals in *Odita* also addressed the policy considerations behind the Ohio rule:

> It would seem that, as a matter of principle, a defectively executed mortgage should be superior to a subsequent legal interest if the subsequent legal interest was acquired with notice of the prior defectively executed mortgage. However, "[w]hile this is the rule in many jurisdictions, the rule is otherwise in Ohio because of the recording statutes." Notwithstanding, with property rights it is not necessarily that the outcome be the best outcome possible in each case; only that the outcome necessarily be consistent across every case so as to provide reliability and pre-dictability. . . .
>
> Therefore, although this court recognizes that the current ruling may seem intuitively unfair or inequitable to some observers, because there exists a significant line of authority finding such, we follow these precedents based upon stare decisis and to lend stability to future property transactions.

*Odita*, 822 N.E.2d at 828-29 (citations omitted).

These cases were decided by intermediate appellate courts, but they rely on several decisions of the Ohio Supreme Court. In the *Denison* case, the Supreme Court held that "[a] defectively executed mortgage when recorded does not establish a lien with priority over subsequently recorded mortgages properly executed." *Citizens National Bank v. Denison*, 133 N.E.2d 329, 333 (Ohio 1956). As the *Odita* court explained:

> Although the particular facts in *Citizens Natl. Bank* concern constructive notice, the court does not indicate anywhere in its decision that actual notice by the subsequent mortgagee is an exception to its holding that the recording of a defectively executed mortgage does not establish a lien with priority over subsequently recorded mortgages properly executed.

*Odita*, 822 N.E.2d at 826. In *Langmede v. Weaver*, the court summarized several earlier decisions, then concluded:

10

These cases, and others that might be cited, have indisputably established the principle that a recorded mortgage which lacks some requisite of legal execution is not available for any purpose against a third person who subsequently acquires the title to or an interest in or a lien upon the property, and that notice by him at the time, either actual or constructive, or both, however complete it may be, of the existence and record of such mortgage, imparts no value or officacy [*sic*] to it.

*Langmede v. Weaver*, 60 N.E. 992, 997 (Ohio 1901). Likewise, in *Strang v. Beach*, the court held:

Under the express and peculiar phraseology of these statutes, a series of authoritative decisions have [*sic*] been made in this State, holding that such mortgages only as were signed, sealed, witnessed and acknowledged in accordance with the provisions of the first section of the act first above referred to, were entitled to be recorded, or could be recognized as having been delivered for record or recorded; and that none but mortgages so executed and delivered for record, or recorded, could have any effect whatsoever, either at law or in equity, as to third parties, whether such third parties had notice of the defectively executed or unrecorded mortgage or not.

*Strang v. Beach*, 11 Ohio St. 283, 288 (1860).

Accordingly, under Ohio law, if OSB's mortgage was improperly executed, it would be "treated as though it has not been recorded." *Odita*, 822 N.E.2d at 825. Under § 551 of the Bankruptcy Code, Haven, as debtor in possession, would step into the shoes of one holding an unrecorded mortgage. Under Ohio law, a subsequent, recorded mortgage has priority over an unrecorded mortgage. Ohio Rev. Code § 5301.23(A). Thus, if Haven were to prevail against OSB in the adversary proceeding, Porter would have priority to the proceeds of the sale of the Property and its claim would be satisfied in full. A compromise providing for the sale proceeds to be remitted first to the Debtor's estate and then to OSB is not, therefore, "fair and equitable."

Appellees assert, however, that Porter was not entitled to consideration in connection with the settlement because it "did not file either a counterclaim or a cross claim in the underlying Litigation asserting its interests in the Proceeds." (Brief of Appellee Ohio Savings Bank, at 7.)

11

Appellees cite no authority for the proposition that Porter's claim to the proceeds constitutes a compulsory counterclaim or cross-claim that is waived if not raised in the initial answer. Indeed, Rule 7013 of the Federal Rules of Bankruptcy Procedure expressly provides that a defendant sued by a debtor in possession "need not state as a counterclaim any claim that the party has against the debtor, the debtor's property, or the estate, unless the claim arose after the entry of an order for relief." In addition, when a counterclaim is omitted "through oversight, inadvertence, or excusable neglect, or when justice requires, the pleader may by leave of court set up the counterclaim by amendment." Fed. R. Bankr. P. 7013; Fed. R. Civ. P. 13(f). Moreover, while Rule 13 requires that certain counterclaims be raised in the party's answer, there is no requirement that any cross-claims be included. Fed. R. Bankr. P. 7013; Fed. R. Civ. P. 13(a), (g). Porter clearly asserted its claim of priority in the proceeds in Paragraphs 23 and 24 of its answer (under the heading "Affirmative Defenses," Fed. R. Bankr. P. 7008(a); Fed. R. Civ. P. 8(c) (counterclaims mistakenly designated as defenses must be treated as if there had been a proper designation)) and in greater detail in its response to Haven's motion for summary judgment. So Haven and OSB were clearly on notice of Porter's claimed interest in the proceeds when they entered into their agreement disposing of the litigation. And Rule 41(a)(2) of the Federal Rules of Civil Procedure, adopted by Rule 7041 of the Federal Rules of Bankruptcy Procedure, provides that, where a counterclaim exists, an action shall not be dismissed over a defendant's objection unless the counterclaim can remain for independent adjudication.

The record does not contain adequate facts to support the decision of the bankruptcy court approving the compromise between Haven and OSB. First, although there is a genuine legal issue as to the avoidability of OSB's mortgage, there is little question regarding the proper distribution of the proceeds of the sale of the Property if the mortgage is avoided. Second, there is no question regarding the enforceability of the decision on the merits. Third, the controversy is not complex, and the pursuit of the adversary proceeding to its conclusion would not involve significant additional expense, inconvenience, or delay. Fourth, not all of the parties to the proceeding have joined in the agreement and the interests of the creditor with the most to lose – Porter – have been totally disregarded. OSB correctly characterizes the nature of the dispute as "all or nothing" (Brief of Appellee Ohio Savings Bank, at 5), but in no event would the bankruptcy estate have priority to the sale

12

proceeds over Porter: if the mortgage is not avoidable, OSB would be in first position and Porter would be in second position; and, if the mortgage is avoidable, Porter would be in first position and the estate (or Glover) would be in second position. Accordingly, a settlement allocating the sale proceeds only between Haven and OSB but not Porter cannot be "fair and equitable." The bankruptcy court abused its discretion in approving the agreement.

## V. CONCLUSION

For the foregoing reasons, the bankruptcy court's order approving the compromise is **REVERSED**.