MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, Appellee,

v.

ODITA, Appellee; Fairbanks Capital Corporation et al., Appellants.

[Cite as *Mtge. Electronic Registration Sys. v. Odita,*
159 Ohio App.3d 1, 2004-Ohio-5546.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 04AP–255.

Decided Oct. 19, 2004.

**2**

Steven E. Elder Co., L.P.A., and Steven E. Elder, for appellee Mortgage Electronic Registration Systems.

McDonald, Frank, Hitzman & Holman and Robert B. Holman, for appellants.

BROWN, Judge.

{¶ 1} Fairbanks Capital Corporation ("Fairbanks") and Jonathan Robinson, defendants-appellants, appeal from a judgment of the Franklin County Court of Common Pleas, in which the trial court granted summary judgment to Mortgage Electronic Registration Systems ("MERS"), plaintiff-appellee.

{¶ 2} Tempest Properties and Management Corporation ("Tempest") was the title owner of certain real property located in Columbus, Ohio. Eric Odita was Tempest's president and owner. On August 21, 1998, Odita granted a first mortgage on this real property to Labyrinth Mortgage and Investment Company ("Labyrinth") in the amount of $3,500. This mortgage was recorded on August 27, 1998. Odita then granted a second mortgage to Labyrinth on August 21, 1998, in the amount of $75,000. Odita signed the second mortgage in his individual capacity, and it was acknowledged by a notary public on August 21. The second mortgage was also recorded on August 27, 1998. The second mortgage was re-recorded on September 22, 1998. The re-recorded mortgage included Tempest as the mortgagor, and Odita signed in his representative capacity as president of Tempest. However, his signature was not notarized properly on the re-recorded mortgage. MERS now holds this re-recorded mortgage ("MERS mortgage").

{¶ 3} On October 22, 1999, First National Security Corporation ("First National") filed a foreclosure action against Odita, Tempest, and Labyrinth on the property. First National obtained a judgment against the parties on June 1, 2000. On October 30, 2000, Tempest sold the property to Robinson for $105,000. Robinson obtained a mortgage from Old Kent Mortgage Company ("Old Kent") in the amount of $84,000. Fairbanks now holds the mortgage. The mortgage was recorded on November 22, 2000. Robinson's and Old Kent's Department of Housing and Urban Development ("HUD") settlement statement specifically provided for a $75,000 payoff of the MERS mortgage. However, apparently, the $75,000 payoff never occurred.

{¶ 4} On October 9, 2002, MERS filed a complaint for money, foreclosure, and other equitable relief against several parties, including Odita, Robinson, Labyrinth, and Fairbanks. On February 26, 2003, MERS filed an amended complaint adding new parties, including Tempest. On July 24, 2003, Robinson and Fairbanks (hereafter, "appellants") filed a joint and separate motion for summary judgment. In their motion for summary judgment, appellants argued that they were entitled to summary judgment because the MERS mortgage was improperly executed and thus not entitled to record. Appellants claimed that the failure of the notary public to acknowledge the addition of Tempest as a mortgagor was fatal to MERS's foreclosure on its mortgage and that MERS was not entitled to priority over subsequently filed mortgages. On November 24, 2003, MERS filed a motion for summary judgment. MERS asserted that appellants had actual notice of the MERS mortgage and, thus, could not claim priority over it because they were not bona fide purchasers for value without notice. MERS also contended that because proceeds from its mortgage loan paid off two liens in the amount of $34,418.80 (a mortgage to Birmingham Bancorp for $30,918.80 recorded on June 11, 1998, and the mortgage to Labyrinth for $3,500 recorded on August 27, 1998) that were recorded prior to appellants' mortgage, MERS was entitled to priority via equitable subrogation. On January 30, 2004, the court granted MERS's motion for summary judgment and denied appellants' joint and separate motion for summary judgment. A judgment entry and a supplemental judgment entry were filed on February 23, 2004. In the judgment entry, the trial court found that MERS was entitled to summary judgment based upon appellants' actual notice of the MERS mortgage and equitable subrogation. In the supplemental judgment entry, the trial court found that MERS was entitled to summary judgment based upon equitable subrogation and that, because appellants were on actual notice of the MERS mortgage, MERS was entitled to have the mortgage reformed to include execution by Odita as president of Tempest. Appellants appeal from the judgment of the trial court, asserting the following assignments of error:

1. The trial court erred in determining that plaintiff-appellee, MERS, was entitled to priority to the full extent of its mortgage plus interest where said mortgage was defectively executed and therefore not entitled to record pursuant to *Citizens National Bank v. Denison*, 16[5] Ohio St. 89 [59 O.O. 96, 133 N.E.2d 329] (1956).

2. The trial court erred in failing to recognize the long-standing mortgage priority principle in Ohio that states that mortgage lien priority is determined by the first properly executed and recorded mortgage pursuant to O.R.C. § 5301.23.

3. The trial court erred in permitting plaintiff-appellee, MERS, to reform its defectively executed mortgage where the record illustrated that plaintiff-

**4**

appellee never affirmatively pled reformation nor any facts relative to mistake in accordance with Ohio Civil Rule 9(B).

{¶ 5} As appellants argue their first and second assignments of error together, we will also address them together. Appellants argue in their first assignment of error that the trial court erred in determining that MERS was entitled to priority to the full extent of its mortgage plus interest where the MERS mortgage was defectively executed and thus not entitled to record. Appellants argue in their second assignment of error that the trial court erred in failing to recognize the long-standing mortgage priority principle that mortgage lien priority is determined by the first properly executed and recorded mortgage pursuant to R.C. 5301.23.

{¶ 6} The trial court granted summary judgment to MERS. When reviewing a motion for summary judgment, courts must proceed cautiously and award summary judgment only when appropriate. *Franks v. Lima News* (1996), 109 Ohio App.3d 408, 672 N.E.2d 245. Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party. *State ex rel. Howard v. Ferreri* (1994), 70 Ohio St.3d 587, 589, 639 N.E.2d 1189. When reviewing the judgment of the trial court, an appellate court reviews the case de novo. *Franks,* supra.

{¶ 7} Appellants concede that MERS was entitled to lien priority to the extent that its mortgage paid off prior liens, or $34,418.80. For purposes of appeal, appellants contest only whether MERS was entitled to lien priority to the full extent of its defectively executed mortgage. Appellants rely largely upon R.C. 5301.01 and 5301.25 and *Citizens Natl. Bank v. Denison* (1956), 165 Ohio St. 89, 59 O.O. 96, 133 N.E.2d 329, for the proposition that a defectively executed mortgage is not entitled to priority over a subsequent properly executed and recorded mortgage.

{¶ 8} The statute of conveyances, R.C. 5301.01(A), provides:

A * * * mortgage * * * shall be signed by the * * * mortgagor * * *. The signing shall be acknowledged by the * * * mortgagor * * * before a judge or clerk of a court of record in this state, or a county auditor, county engineer, notary public, or mayor, who shall certify the acknowledgement and subscribe the official's name to the certificate of the acknowledgement.

{¶ 9} R.C. 5301.25(A) provides:

All deeds, land contracts * * * and instruments of writing properly executed for the conveyance or encumbrance of lands, tenements, or hereditaments * * * shall be recorded in the office of the county recorder of the county in which the premises are situated, and until so recorded or filed for record, they are fraudulent, so far as relates to a subsequent bona fide purchaser having, at the time of purchase, no knowledge of the existence of such former deed or land contract or instrument.

{¶ 10} MERS does not contest in this appeal that the signature on the second mortgage was defective insofar as Odita's signature on behalf of Tempest was not acknowledged by a notary public. We agree. See *Citizens Natl. Bank*, 165 Ohio St. 89, 59 O.O. 96, 133 N.E.2d 329, at paragraph two of the syllabus (a mortgage by two persons is not properly executed in accordance with the provisions of R.C. 5301.01 and is not entitled to record under R.C. 5301.25 where there is a failure to follow the statutory requirements in that the signing by one mortgagor is not in fact acknowledged before a notary public). Further, appellants do not contest on appeal that they were aware of the defectively executed mortgage via their title work and the HUD settlement statement and, thus, had actual notice of the prior mortgage. Based upon a review of the record, we agree. Accordingly, we must determine the effect of the defective acknowledgement in the MERS mortgage and appellants' actual notice of such defectively executed mortgage.

{¶ 11} A defectively executed mortgage is not entitled to record, and even if it is recorded, the defective mortgage is treated as though it has not been recorded. 69 Ohio Jurisprudence 3d (2004), Mortgages and Deeds of Trust, Section 103, As Against Subsequent Legal Interests. In *Citizens Natl. Bank*, supra, the Ohio Supreme Court held that under R.C. 5301.25, the recording of a defectively executed mortgage does not establish a lien with priority over subsequently recorded mortgages properly executed and that the rule is applicable to situations in which, by evidence, the defective condition of the conveyance is disclosed as well as to instances in which the instrument is defective on its face. Id. 165 Ohio St. 89, 59 O.O. 96, 133 N.E.2d 329 at paragraph one of the syllabus; see, also, 69 Ohio Jurisprudence 3d (2004) Mortgages and Deeds of Trust, Section 104, As Against Subsequent Mortgage ("A defectively executed mortgage, whether recorded or not, is not valid as against a subsequent properly executed and recorded mortgage"). In other words, a defectively executed mortgage that has been recorded derives no efficacy from being placed on record and is not better than one properly executed. Mortgages and Deeds of Trust, Section 103, supra. Therefore, a defectively executed mortgage without proper acknowledgement of the mortgagor by a notary will not be entitled to priority over a subsequent, properly recorded mortgage. Id.

{¶ 12} Applying these principles to the present case, the MERS mortgage was defectively executed insofar as Odita's signature, on behalf of Tempest, was not properly acknowledged by a notary public pursuant to R.C. 5301.25. Thus, MERS's defectively executed mortgage could not take priority over any subsequent, validly recorded mortgage. There is no dispute that appellants' subsequent mortgage was properly executed and valid. Therefore, according to the authorities cited above, appellants' subsequent mortgage would be entitled to priority over the MERS mortgage.

{¶ 13} However, MERS asserts that because appellants had actual knowledge of MERS's prior, defectively executed mortgage, they did not take their mortgage without notice and that appellants' subsequent mortgage cannot have priority over MERS's mortgage, even though it was defectively executed. MERS maintains that *Citizens Natl. Bank* stands only for the proposition that instruments that are not entitled to be recorded or that are defectively executed, such as those that have not been acknowledged as prescribed in R.C. 5301.01, do not serve as constructive notice to a subsequent purchaser even though recorded. MERS contends that the holding in *Citizens Natl. Bank* does not apply to situations, such as in the present case, in which the subsequent mortgagee takes with actual knowledge of the prior, defectively executed mortgage. Thus, MERS contends that a subsequent mortgagee who takes with actual knowledge of the prior defective mortgage cannot claim priority over the prior mortgage. MERS also points to the language in R.C. 5301.25 that indicates that until a mortgage is recorded, it is "fraudulent insofar as [it] relate[s] to a subsequent bona fide purchaser having, at the time of purchase, no knowledge of the existence of such former deed or land contract, or instrument." MERS construes this code section to mean that even if a defectively executed mortgage is considered unrecorded, it loses priority only to a subsequent purchaser without notice but not to a subsequent purchaser with actual notice. MERS also cites numerous cases in its appellate brief for the proposition that R.C. 5301.25 permits an unrecorded mortgage to claim priority over a subsequently recorded mortgage if the subsequent mortgagee had knowledge of the existence of the former mortgage. Apparently, the trial court agreed with MERS's reading of *Citizens Natl. Bank*, R.C. 5301.25, and the other cases cited by MERS in finding that MERS's defectively executed mortgage was entitled to priority over appellants' subsequent mortgage because appellants had actual knowledge of the prior defectively executed mortgage.

{¶ 14} MERS and the trial court misconstrue both *Citizens Natl. Bank* and R.C. 5301.25. Nowhere in *Citizens Natl. Bank* does the Ohio Supreme Court limit paragraph one of its syllabus to situations in which only constructive notice is alleged. Although the particular facts in *Citizens Natl. Bank* concern con-

structive notice, the court does not indicate anywhere in its decision that actual notice by the subsequent mortgagee is an exception to its holding that the recording of a defectively executed mortgage does not establish a lien with priority over subsequently recorded mortgages properly executed. With regard to R.C. 5301.25, the exception for subsequent bona fide purchasers who take with knowledge of the existence of the unrecorded prior mortgage applies only to situations where the prior unrecorded mortgage was properly executed and valid. Likewise, in the other cases cited by MERS that permit an unrecorded mortgage to claim priority over a subsequent mortgage when the subsequent mortgagee had actual knowledge of the prior mortgage, the unrecorded prior instruments were properly executed. Therefore, we find these citations inapposite to the present case.

{¶ 15} This court's research reveals significant authority for the proposition that a defectively executed mortgage is invalid as to a subsequent mortgagee or lienholder, even if the subsequent mortgagee/lienholder had actual knowledge of the prior defectively executed mortgage. One recent commentator succinctly summarized Ohio law on this subject as follows: "In Ohio, * * * a defectively executed mortgage will be afforded no priority over subsequent legal interests or liens, even where the subsequent legal interests or liens were acquired with actual notice of the mortgage." Dunaway, Law of Distressed Real Estate (2004), Section 78:3, Effect of Defectively Executed Mortgage. Numerous cases support this interpretation of the state of Ohio law on the subject. See, e.g., *Langmede v. Weaver* (1901), 65 Ohio St. 17, 34, 60 N.E. 992 (Ohio case law indisputably establishes the principle that a recorded mortgage that lacks some requisite of legal execution is not available for any purpose against a third person who subsequently acquires the title to or an interest in the property and that actual notice by the subsequent acquirer at the time, however complete it may be, of the existence and record of the prior defectively executed mortgage imparts no value or efficacy to it); *Strang v. Beach* (1860), 11 Ohio St. 283, 288–289, 1860 WL 51 (defectively executed mortgages are not entitled to be recorded, and any such mortgages recorded have no effect whatsoever, either at law or in equity, as to third parties, whether the third parties had notice of the defectively executed mortgage or not); *Priority Mortgage & Inv. Co. v. Flesariu* (1924), 2 Ohio Law Abs. 760, 1924 WL 2791 (a mortgage not being executed according to the requirements of the statute cannot be properly recorded and, therefore, is not effective as to third parties who acquire an interest in or lien upon the real estate, even though the third parties have full knowledge of the mortgage and knew that the parties would regard the transaction as creating a mortgage); *Regan v. Walsh* (1901), 11 Ohio Dec. 611, 8 Ohio N.P. 691, 1901 WL 852 (a mortgage defectively executed is not entitled to record and, if recorded, the unauthorized record will not give it any priority over later liens or purchases, even though the

subsequent purchaser or mortgagee had actual notice of the former mortgage); *Kane v. Moulton* (1900), 1 Ohio Dec. 410, 1900 WL 1194 (a mortgage defectively executed is invalid as to subsequent purchasers of the land, even if the subsequent purchasers had notice of the existence of the prior mortgage both by the record and the recital).

{¶ 16} Further, contrary to MERS's contention that the holding in paragraph one of *Citizens Natl. Bank* does not apply to a subsequent mortgagee who takes with actual notice of the prior defectively executed mortgage, a relatively recent case has applied *Citizens Natl. Bank* to find that a subsequent mortgagee with actual knowledge of a prior defectively executed mortgage is entitled to priority over the prior mortgage. In *Majestic Homes, Inc. v. Figgers* (Nov. 27, 1985), Lorain App. No. 3831, 1985 WL 3998, a married couple lived in a home and entered into a contract with a homebuilder to build a new home. As a result of a series of transactions completed to finance the new home, a lender ("bank one") received first mortgages on both the new and old homes. In addition, the couple owed the homebuilder money for extra work done on the new home. The couple signed blank note and blank mortgage forms covering both the new and old homes for the homebuilder. The notary was not present when the couple signed the blank forms, and he notarized them at a later date. The homebuilder's note and mortgages on both properties were then assigned to another bank ("bank two").

{¶ 17} The couple filed a petition in bankruptcy some time after the construction of the new home. Bank one, the holder of the first mortgages on both the new and old homes, foreclosed on the new home, and the house was ordered sold. Bank two received no part of the proceeds of this sale. Through a series of assignments, bank two's note and mortgage on the old home eventually came into the possession of an investment company.

{¶ 18} The couple eventually sold the old home to a second couple, who obtained financing from a mortgage company. The mortgage company's title agent uncovered the prior mortgages in favor of bank one and the homebuilder. The sale price agreed upon, however, was only sufficient to pay off bank one's mortgage. The title agent then contacted the homebuilder to see if it would be willing to release its mortgage on the old home, but the homebuilder never did so. The title agent proceeded to close the sale of the old property and paid the debt owed to bank one. The title agency insured that the title was clear and that the mortgage company's mortgage was a first lien. The mortgage company then assigned its mortgage to a third bank ("bank three"). The homebuilder then filed an action to foreclose on the old home, seeking a determination that its mortgage was entitled to priority over the mortgage company's subsequent

mortgage. The trial court found that the homebuilder's mortgage was defective and ordered that it be canceled as of record.

{¶ 19} In affirming the trial court, the court of appeals concluded that the homebuilder's mortgage was improperly notarized and, therefore, defective pursuant to R.C. 5301.01. Therefore, the court of appeals agreed with the trial court that the homebuilder's defective mortgage was not entitled to be recorded and, although recorded, it could have no priority over later properly executed and recorded mortgages. Id., citing *Wayne Bldg. & Loan Co. v. Hoover* (1967), 12 Ohio St.2d 62, 41 O.O.2d 279, 231 N.E.2d 873, and *Citizens Natl. Bank*, supra. It is apparent from the facts in *Majestic Homes* that the mortgage company that recorded its valid mortgage subsequent to the homebuilder's mortgage had actual notice of the homebuilder's prior mortgage, as the mortgage company's title agent uncovered the mortgage in favor of the homebuilder. Thus, despite the mortgage company's actual notice of the homebuilder's prior mortgage, the court of appeals still found that the homebuilder's defectively executed mortgage, though recorded, was not entitled to priority over the mortgage company's subsequently recorded mortgage.

{¶ 20} In the present case, there is no dispute that the MERS mortgage was defectively executed because Odita failed to properly notarize his signature on it. Further, there is no dispute that appellants had actual notice of the prior defectively executed mortgage, as evidenced by the HUD settlement statement. Applying the line of precedents outlined above to the present case, we find that Odita and Tempest's defectively executed mortgage to MERS was not entitled to record and, though recorded, did not have priority over appellants' properly executed and recorded mortgage, despite appellants' actual knowledge of MERS's prior mortgage at the time of recordation.

{¶ 21} It would seem that, as a matter of principle, a defectively executed mortgage should be superior to a subsequent legal interest if the subsequent legal interest was acquired with notice of the prior defectively executed mortgage. See 69 Ohio Jurisprudence 3d, Mortgages and Deeds of Trust, Section 103, supra. However, "[w]hile this is the rule in many jurisdictions, the rule is otherwise in Ohio because of the recording statutes." Id. Notwithstanding, with property rights it is not necessary that the outcome be the best outcome possible in each case; only that the outcome be consistent across every case so as to provide reliability and predictability. In addressing an issue similar to that in the present case, the Ohio Supreme Court noted that it was constrained by cases that had been affirmed and adhered to by subsequent legal authority for many years. See *White v. Denman* (1853), 1 Ohio St. 110, 115, 1853 WL 2. The court was also mindful that its decision was based on the construction given to a

statute, had relation to rights of property, and had become a rule of property in determining priorities among creditors. Id. The court then explained:

> Stability and certainty in the law, are of the very first importance. Hardships may sometimes result from a stern adherence to general rules. This is unavoidable under any system of jurisprudence. Some barrier is essential to guard against uncertainty. If judicial decisions are subject to frequent change, it would disturb and unsettle the great landmarks of property. The certainty of a rule is often more important than the reason of it; and in the case now before us, we think that the maxim, *stare decisis et non quieta movere*, is the safe and judicial policy, and should be adhered to. If the law, as heretofore pronounced by the court, in giving a construction to the statute, ought not to stand, it is in the power of the Legislature to amend it without impairing rights acquired under it.

Id. at 115.

{¶ 22} Therefore, although this court recognizes that the current ruling may seem intuitively unfair or inequitable to some observers, because there exists a significant line of authority supporting the ruling, we follow these precedents based upon stare decisis and to lend stability to future property transactions. For these reasons, appellants' first and second assignments of error are sustained.

{¶ 23} Appellants argue in their third assignment of error that the trial court erred in permitting MERS to reform its defectively executed mortgage. Reformation of an instrument is an equitable remedy whereby a court modifies an instrument that, because of mutual mistake on the part of the original parties to the instrument, does not evince the actual intention of those parties. *Greenfield v. Aetna Cas. & Sur. Co.* (1944), 75 Ohio App. 122, 128, 30 O.O. 427, 61 N.E.2d 226. In *Delfino v. Paul Davies Chevrolet, Inc.* (1965), 2 Ohio St.2d 282, 31 O.O.2d 557, 209 N.E.2d 194, the Ohio Supreme Court addressed whether a court may reform an instrument defectively executed in contravention of R.C. 5301.01. In *Delfino*, the owner of a piece of land leased the property to a used car dealer. An instrument was executed purporting to be a lease; however, there was only one witness to the signature on the lease, and the signature of the grantor, although proper on its face, was shown to have been acknowledged by a notary public at some later time and place. The used car dealership was sold, but the property owner refused to assign the lease. The used car dealer abandoned the lot and refused to pay further rent. The property owner then brought action against the used car dealer and recovered damages for unpaid rents. This court reversed the trial court, finding that because the lease was defectively executed and was not acknowledged in conformity with R.C. 5301.01, it could not be reformed.

{¶ 24} On appeal, the Ohio Supreme Court affirmed this court's decision. The court explained that the purpose of reformation is to cause an instrument to express the intent of the parties as to the contents thereof, i.e., to establish the actual agreement of the parties, and is not meant to "create" an obligation. *Delfino,* 2 Ohio St.2d at 286, 31 O.O.2d 557, 209 N.E.2d 194, citing 47 Ohio Jurisprudence 2d 120, Reformation of Instruments, Section 2. The court also explained that reformation presupposes the existence of a valid instrument. Id. Thus, the court found that a court of equity under its power of reformation cannot validate or give life to an invalid instrument, as to do so would require the court to re-execute an improperly executed instrument and create a new agreement. Accordingly, the court concluded that, where a statute such as R.C. 5301.01 requires certain formalities for the execution of an instrument, a court of equity under its powers of reformation cannot supply these formalities to validate a defectively executed instrument.

{¶ 25} Pursuant to *Delfino,* in the present case, the trial court could not reform the defectively executed mortgage between MERS and Tempest, as to do so would be to supply the formalities required by R.C. 5301.01 and create a new agreement for the parties thereto. Thus, the trial court's reformation of the prior mortgage was improper. For these reasons, the trial court erred in granting summary judgment, and appellants' third assignment of error is sustained.

{¶ 26} Accordingly, appellants' three assignments of error are sustained, the judgment of the Franklin County Court of Common Pleas granting summary judgment to MERS is reversed insofar as that court found that MERS was entitled to lien priority beyond the extent to which its mortgage paid off the two prior liens, and this matter is remanded to that court for proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

PETREE and SADLER, JJ., concur.