IN RE: Jerry Wayne OAKES, Jennifer Ann Oakes, Debtors

Donald F. Harker III, Trustee, Plaintiff

v.

PNC Mortgage Company, Defendant

Case No. 13–33828
Adv. No. 14–3014

United States Bankruptcy Court, S.D. Ohio, Western Division.

Signed February 15, 2017

Entered 02/16/2017

---

Donald F. Harker, III, Centerville, OH, John Paul Rieser, Dayton, OH, for Plaintiff.

Amelia A. Bower, Columbus, OH, for Defendant.

## DECISION OF THE COURT DENYING MOTION OF PNC MORTGAGE COMPANY TO DISMISS AND/OR FOR JUDGMENT ON THE PLEADINGS AS TO THE AMENDED COMPLAINT [Adv. Doc. 42]

Lawrence S. Walter, United States Bankruptcy Judge

Before the court is the *Motion of PNC Mortgage Company to Dismiss and/or for Judgment on the Pleadings as to the Amended Complaint* ("Motion") [Adv. Doc. 42]. The Plaintiff Chapter 7 Trustee filed an objection in opposition to the Motion [Adv. Doc. 43] and Defendant PNC Mortgage Company filed a reply [Adv. Doc. 44]. In addition, the Plaintiff filed a brief and memorandum of law [Adv. Doc. 45], to which the Defendant filed a reply brief [Adv. Doc. 46], which was followed by the Plaintiff's reply and rebuttal [Adv. Doc. 47]. This matter is now ripe for decision.

On July 8, 2016, Plaintiff Chapter 7 Trustee Donald F. Harker III ("Trustee") filed an amended adversary complaint [Adv. Doc. 40] to avoid a mortgage held by Defendant PNC Mortgage Company ("PNC") on real property owned by the Debtors. The Trustee asserts that PNC's mortgage is avoidable pursuant to 11 U.S.C. § 544(a) and Ohio law because the mortgage was defectively executed in that the notary failed to properly certify the Debtors' signatures in the acknowledgment clause.

In its Motion, PNC does not deny the mortgage defect nor the judicial precedent supporting avoidance of a mortgage containing a "blank" acknowledgment clause under § 544(a) and Ohio law. Instead, PNC argues that recently enacted Ohio Rev. Code § 1301.401, a statute describing the constructive notice provided by the recording of certain types of documents, vitiates the trustee's power to avoid recorded mortgages based on defects in their execution as either a § 544(a) hypothetical bona fide purchaser or judicial lien creditor.

After thorough review of the relevant Ohio recording statutes, Ohio case law construing the state's recording statutes, and the Ohio Supreme Court's interpretation of Ohio Rev. Code § 1301.401 in *In re Messer*, the court disagrees with PNC. While Ohio Rev. Code § 1301.401 deems the recording of a defectively executed mortgage to provide constructive notice, such notice does not affect the priority of liens involving a defectively executed mortgage. As such, the Trustee retains the power to avoid PNC's defectively executed mortgage as a judicial lien creditor pursuant to § 544(a)(1).

## FACTUAL BACKGROUND

For purposes of the Motion, the following facts from the complaint are deemed true. Debtors Jerry Wayne Oakes and Jennifer Anne Oakes ("Debtors") filed a

Chapter 7 petition on September 17, 2013 [Adv. Doc. 40, ¶ 3]. They scheduled an interest in real property located at 41 Noelle Court in Franklin County, Ohio valued at $160,000.00 ("Property") [*Id.*]. The Debtors acquired title to the Property by deed dated May 15, 2002 and filed with the Warren County, Ohio Recorder's Office [*Id.*, ¶ 4 and Ex. A].

On or about May 30, 2003, PNC filed with the Warren County, Ohio Recorder's Office a document purporting to be a lien against the Property in order to secure a loan in the sum of $144,000 ("Mortgage") [*Id.*, ¶ 7 and Ex. B]. While the Debtors' names and signatures appear on the Mortgage as the "Borrowers", their names do not appear within the acknowledgement clause signed by the notary public such that the clause does not acknowledge the signature of the Debtors [*Id.*, ¶¶ 7–8 and Ex. B]. As such, the Trustee asserts that the acknowledgement clause is defective and does not substantially comply with the requirements of Ohio Rev. Code § 5301.01 rendering the Mortgage avoidable [*Id.*, ¶ 8].

## STANDARD FOR JUDGMENT ON THE PLEADINGS

Defendant PNC requests dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or, alternatively, judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), both of which are incorporated in bankruptcy adversary proceedings by Fed. R. Bankr. P. 7012. However, because an answer has been filed in this case [Adv. Doc. 41], the court construes the Motion as one for judgment on the pleadings. *See* Fed. R. Civ. P. 12(b) (requiring a Rule 12(b)(6) motion to dismiss be filed before a responsive pleading). Nonetheless, whether treated as a motion to dismiss or one for judgment on the pleadings, the Motion is reviewed under the same standard applicable to a Rule

12(b)(6) motion to dismiss for failure to state a claim. *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 511–12 (6th Cir. 2001); *Michael v. Javitch, Block & Rathbone, LLP*, 825 F.Supp.2d 913, 918 (N.D. Ohio 2011).

Under this standard, the court construes the complaint in a light most favorable to the plaintiff accepting all of the complaint's well pleaded factual allegations as true to determine whether the plaintiff states a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); *Ziegler*, 249 F.3d at 512. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. The plausibility standard is "not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (further citation omitted).

The factual allegations provided in the complaint need not be detailed. *Id.*; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Instead, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. Fed. R. Civ. P. 8(a)(2) (incorporated in bankruptcy adversary proceedings by Fed. R. Bankr. P. 7008). *See also Twombly*, 550 U.S. at 555, 127 S.Ct. 1955. Nonetheless, the facts provided must be sufficient to raise a right to relief "above the speculative level" and the plaintiff has the obligation to provide more than just "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955; *Iqbal*, 556 U.S. at 678, 129

S.Ct. 1937 (noting that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").

## LEGAL ANALYSIS

In his amended complaint, the Trustee sets forth five causes of action, all of which fundamentally rely on the Trustee's power to avoid a defectively executed mortgage under a combination of bankruptcy and state law. In the Motion, PNC alleges the Trustee has failed to state any claim upon which relief can be granted. As PNC sees it, the Trustee's claims are built upon an application of a trustee's avoidance powers under 11 U.S.C. § 544(a) that has been vitiated by the enactment of Ohio Rev. Code § 1301.401 and the interpretation of this new state statutory provision by the Supreme Court of Ohio in *In re Messer*, 145 Ohio St.3d 441, 50 N.E.3d 495 (2016). More precisely, PNC argues that Ohio Rev. Code § 1301.401 and *Messer* abrogate a trustee's ability, under § 544(a), to avoid defectively executed but recorded mortgages in Ohio. The Trustee agrees with PNC regarding the impact of Ohio Rev. Code § 1301.401 on his § 544(a)(3) powers to avoid a mortgage as a hypothetical bona fide purchaser. The Trustee maintains, however, that his powers under

§ 544(a)(1) as a hypothetical lien creditor remain viable notwithstanding these new developments under Ohio law. To better understand the interpretive distinction dividing the parties, the court begins with a review of trustee avoidance powers and the manner in which they have been indisputably limited, but not abolished, by Ohio Rev. Code § 1301.401.

### A. Trustee Avoidance Powers Pursuant to 11 U.S.C. § 544(a)

One tool used by a bankruptcy trustee to maximize distribution to unsecured creditors is § 544(a) and the "strong arm" powers it provides allowing a trustee to succeed to the rights of a judicial lien holder, execution creditor, and bona fide purchaser of real property whether or not such an entity exists. 11 U.S.C. § 544(a);[1] *Select Portfolio Services, Inc. v. Burden (In re Trujillo)*, 378 B.R. 526, 531 (6th Cir. BAP 2007). With these powers in tow, a bankruptcy trustee may avoid a prepetition transfer of property by the debtor that would be avoidable by one of these hypothetical entities under state law without regard to any actual notice of the transfer that the trustee may have. *Trujillo*, 378 B.R. at 531; *In re Nowak*, 104 Ohio St.3d 466, 820 N.E.2d 335, 337 (2004). The

---

1. Section 544(a) provides:
 (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
 (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

 (2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or
 (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

purpose of the provision is to " 'cut off unperfected security interests, secret liens and undisclosed prepetition claims against the debtor's property as of the commencement of the case.' " *Drown v. Wells Fargo Bank, N.A. (In re Scott)*, 424 B.R. 315, 329 (Bankr. S.D. Ohio 2010) (further citation omitted) *aff'd* 2011 WL 1188434 (S.D. Ohio 2011).

■ When the real property at issue is located in Ohio, as it is in this case, the state laws of Ohio govern the extent of the trustee's avoidance powers as one of the § 544(a) hypothetical entities. *Simon v. Chase Manhattan Bank (In re Zaptocky)*, 250 F.3d 1020, 1024 (6th Cir. 2001). Prior to the enactment of Ohio Rev. Code § 1301.401, bankruptcy trustees routinely avoided defectively executed mortgages on real property located in Ohio using their ability to obtain the status of a hypothetical bona fide purchaser without actual notice (meaning only constructive notice matters in the bankruptcy context). *See, e.g., Rhiel v. Central Mortg. Co. (In re Kebe)*, 469 B.R. 778 (Bankr. S.D. Ohio 2012); *Rhiel v. Huntington Nat'l Bank (In re Phalen)*, 445 B.R. 830 (Bankr. S.D. Ohio 2011); *Noland v. Burns (In re Burns)*, 435 B.R. 503 (Bankr. S.D. Ohio 2010). A trustee's ability to avoid defectively executed mortgages arose from a combination of Ohio statutory and case law to the effect that defectively executed mortgages were not entitled to be recorded, derived no efficacy from being placed on record and, as such, the recording did not provide constructive notice to subsequent purchasers. *See* Ohio Rev. Code § 5301.25; *Nowak*, 820 N.E.2d at 338; *Citizens Nat'l Bank v. Denison*, 165 Ohio St. 89, 133 N.E.2d 329, 332–33 (1956); *Mortgage Elec. Regis. Sys. v. Odita*, 159 Ohio App.3d 1, 822 N.E.2d 821, 825–26 (2004).

## B. Enactment of Ohio Rev. Code § 1301.401 and the *Messer* Interpretation

As previously noted, both parties agree that 11 U.S.C. § 544(a)(3) can no longer be effectively employed in Ohio to avoid defectively executed but recorded mortgages as a hypothetical bona fide purchaser because Ohio Rev. Code § 1301.401 has dramatically altered the ground rules. Ohio Rev. Code § 1301.401, effective March 27, 2013, provides:

(A) For purposes of this section, "public record" means either of the following:

(1) Any document described or referred to in section 317.08 of the Revised Code;

(2) Any document the filing or recording of which is required or allowed under any provision of Chapter 1309. of the Revised Code.

(B) The recording with any county recorder of any document described in division (A)(1) of this section or the filing or recording with the secretary of state of any document described in division (A)(2) of this section shall be constructive notice to the whole world of the existence and contents of either document as a public record and of any transaction referred to in that public record, including, but not limited to, any transfer, conveyance, or assignment reflected in that record.

(C) Any person contesting the validity or effectiveness of any transaction referred to in a public record is considered to have discovered that public record and any transaction referred to in the record as of the time that the record was first filed with the secretary of state or tendered to a county recorder for recording.

Ohio Rev. Code § 1301.401.

Taking certified questions from the bankruptcy court, the Supreme Court of

Ohio recently interpreted this statute in the *Messer* decision. *In re Messer*, 145 Ohio St.3d 441, 50 N.E.3d 495 (2016). The court focused exclusively on the language of Ohio Rev. Code § 1301.401 interpreting it to mean that recording a mortgage now provides constructive notice to the world of the existence of the mortgage and its contents, even if the mortgage is defectively executed. *Messer*, 50 N.E.3d at 498–99. The court brushed aside the suggestion that the location of the new statutory section under Ohio's Uniform Commercial Code rather than the chapter governing real property rendered the statute inapplicable to mortgages. *Id.* at 497. It had no difficulty determining that the statute applies to all recorded mortgages in Ohio because, quite simply, that is what the "unambiguous statutory language" says. *Id.*

The court further concluded that § 1301.401 is compatible with other mortgage related statutes including Ohio Rev. Code § 5301.01, § 5301.23, and § 5301.25. *Id.* at 498. The debtors argued that application of Ohio Rev. Code § 1301.401 to recorded mortgages conflicts with Ohio Rev. Code § 5301.25(A), which provides as follows:

All deeds, land contracts referred to in division (A)(21) of section 317.08 of the Revised Code, and instruments of writing properly executed for the conveyance or encumbrance of lands, tenements, or hereditaments, other than as provided in division (C) of this section and section 5301.23 of the Revised Code, shall be recorded in the office of the county recorder of the county in which the premises are situated. Until so recorded or filed for record, they are fraudulent insofar as they relate to a subsequent bona fide purchaser having, at the time of purchase, no knowledge of the existence of that former deed, land contract, or instrument.

Ohio Rev. Code § 5301.25(A). Reading the two statutes closely and literally, the Ohio Supreme Court found them to be consistent in that the more recent statute makes no mention "of whether the mortgage has been properly executed, whether it was required to be filed, or whether it is free from defects. If it is a 'mortgage,' notice of the contents is provided." *Messer*, 50 N.E.3d at 498.

The court went on to explain that Ohio Rev. Code § 1301.401 is simply the latest act of Ohio's General Assembly recognizing "instances in which the recording of a deficiently executed mortgage can provide constructive notice." *Id.* It cited two other instances where the legislature created such exceptions. Ohio Rev. Code § 5301.01(B)(1) states that a recorded mortgage executed prior to February 1, 2002 which lacks the acknowledgment of two witnesses (mandatory prior to that date) nevertheless is deemed to provide constructive notice of the mortgage. Ohio Rev. Code § 5301.23(B) states that the failure to include the correct mailing address of a mortgagee on a recorded mortgage does not affect the validity of the mortgage or its effectiveness for purposes of constructive notice. Therefore, Ohio Rev. Code § 1301.401 is merely the latest addition to the list of exceptions.

The paramount and determinative focus of the *Messer* court and the referenced Ohio statutes is constructive notice. As will be discussed below, notice is fatal to a trustee obtaining bona fide purchaser status, but of no relevance when determining the priority of liens. While it is unquestionably true that, in the broadest sense, the purpose of all recording statutes is to provide public notice to third parties, the effect of such notice under Ohio law traditionally depends upon technical compliance with the recording statutes and also the

nature of the third party rights affected. That Ohio Rev. Code § 1301.401 excuses technical compliance and allows defectively executed mortgages to provide constructive notice to subsequent purchasers is now clear under the interpretation provided by the *Messer* decision. However, Ohio law makes an important distinction between the impact of notice on bona fide purchasers and subsequent lien holders.

### C. Ohio Rev. Code § 1301.401: Impact on a Purchaser of Real Property

 Because Ohio Rev. Code § 1301.401 has been ruled to provide constructive notice of a defectively executed mortgage to the world, a bankruptcy trustee's power to avoid such a mortgage as a bona fide purchaser of real property under 11 U.S.C. § 544(a)(3) is undermined. The change in a trustee's avoidance powers wrought by § 1301.401's constructive notice provision stems from the definition of a bona fide purchaser itself. More specifically, a lack of notice is a qualifying element for such status, inherent in the definition. According to Black's Law Dictionary, a bona fide purchaser is:

> Someone who buys something for value without notice of another's claim to the property and without actual or constructive notice of any defects in or infirmities, claims, or equities against the seller's title; one who has in good faith paid valuable consideration for property without notice of prior adverse claims.

Black's Law Dictionary (10th ed. 2014). Ohio statutes, case law and other secondary sources are in accord on the importance of a lack of notice to obtaining bona fide purchaser status. *See* Ohio Rev. Code § 5301.25(A) (noting that a failure to record an instrument makes the instrument fraudulent as to "a subsequent bona fide purchaser having, at the time of purchase, no knowledge of the existence of that former deed, land contract, or instrument"); *Shaker Corlett Land Co. v. City of Cleveland*, 139 Ohio St. 536, 41 N.E.2d 243, 246 (1942) (noting that "unless the rule is changed by legislation, a bona fide purchase involves three elements, (1) a valuable consideration, (2) good faith and (3) absence of notice."); 80 Ohio Jur. 3d *Real Property Sales and Exchanges* § 214 ("In order to be entitled to protection as a bona fide purchaser, the purchaser must acquire legal title without notice of prior equities."); 66 Am. Jur. 2d *Records and Recording Laws* § 123 ("[A] good-faith purchaser under the recording law is someone who gives consideration in good faith without actual, implied, or constructive notice of inconsistent outstanding rights of others.").[2]

Because Ohio Rev. Code § 1301.401 plainly deems defectively executed but recorded mortgages to be notice to the world, it undercuts an essential element of bona fide purchaser status. Accordingly, the statute precludes a bankruptcy trustee from avoiding a mortgage as a bona fide purchaser under § 544(a)(3) because under Ohio law, a purchaser of real estate cannot obtain bona fide purchaser status if the purchaser has constructive notice of the prior defectively executed mortgage. *See Phalen*, 445 B.R. at 838–39.

### D. Ohio Rev. Code § 1301.401: Impact on Lien Creditors

 While acknowledging that constructive notice defeats his claim for avoid-

---

**2.** The same concept has carried over to Ohio's version of Article 8 of the UCC which defines "protected purchaser" in the context of investment securities: "A 'protected purchaser' means a purchaser of a certificated or uncer- tificated security, or of an interest therein, who: ... [d]oes not have notice of any adverse claim to the security ...." Ohio Rev. Code § 1308.17.

ance of PNC's mortgage as a hypothetical bona fide purchaser, the Trustee argues that the same is not true with respect to his claim as a hypothetical judicial lien creditor. According to the Trustee, this leaves intact his claim to avoid PNC's defectively executed mortgage under 11 U.S.C. § 544(a)(1). Pursuant to this Bankruptcy Code provision, a trustee gains the status of a subsequent judicial lien creditor deemed to have perfected his interest as of the date of the bankruptcy petition filing. 11 U.S.C. § 544(a)(1); *Scott,* 424 B.R. at 327. A bankruptcy trustee may avoid a prepetition transfer of a debtor's property, including a mortgage lien, to the extent that such a judicial lien creditor could obtain a superior interest under relevant state law. *Graham v. Huntington Nat'l Bank (In re Medcorp. Inc.),* 472 B.R. 444, 450 (Bankr. N.D. Ohio 2012) (noting that "[t]he substance of § 544(a)(1) is to confer upon a bankruptcy trustee, at the commencement of a bankruptcy case, the status of a hypothetical judicial lien holder, and then to allow the trustee to avoid any liens claimed by a creditor in estate property to the extent that, as against the creditor's lien, the trustee's hypothetical judicial lien would be superior in right").

Turning to Ohio law, the question becomes whether the constructive notice of a defectively executed but recorded mortgage provided in Ohio Rev. Code § 1301.401 defeats a subsequent properly perfected lienholder in the same manner it defeats a bona fide purchaser. PNC argues that, logically, lienholders and bona fide purchasers should be treated the same with respect to constructive notice of prior

recorded but defective liens. However, "[n]either the Bankruptcy Code nor Ohio law requires that a judgment creditor have the same attributes of a bona fide purchaser as it pertains to notice of a prior interest; neither requires a judgment creditor to lack notice of an unrecorded or defective lien in order to obtain a superior lien on a judgment debtor's property." *Stubbins v. Wells Fargo Bank (In re Gibson),* 395 B.R. 49, 57 (Bankr. S.D. Ohio 2008). Indeed, a review of Ohio case law demonstrates that notice of a prior recorded but defectively executed mortgage has no impact on the lien priority dispute.

Under Ohio law, a mortgage becomes operative as to third parties only upon its recording. *GMAC Mortg. Corp. v. McElroy,* 2005 WL 1364580, at *2 (Ohio Ct. App. June 6, 2005) (citing *Sidle v. Maxwell,* 4 Ohio St. 236 (1854)). However, to be entitled to recording, a mortgage must be properly executed. Ohio Rev. Code § 5301.23(A);[3] *Odita,* 822 N.E.2d at 825. From this foundation, judicial precedent has developed holding that a defectively executed mortgage derives no efficacy from being recorded and is not valid against a subsequent properly executed and recorded lien *even if the subsequent lienholder has notice. Denison,* 133 N.E.2d at 333 (noting that a defectively executed mortgage "is not entitled to record, nor valid though admitted to record, as against a subsequent properly executed and recorded mortgage"); *Langmede v. Weaver,* 65 Ohio St. 17, 60 N.E. 992, 997 (1901) ("... a recorded mortgage which lacks some requisite of legal execution is not

---

**3.** Ohio Rev. Code § 5301.23(A) states as follows:

All properly executed mortgages shall be recorded in the office of the county recorder of the county in which the mortgaged premises are situated and shall take effect at the time they are delivered to the record-

er for record. If two or more mortgages pertaining to the same premises are presented for record on the same day, they shall take effect in the order of their presentation. The first mortgage presented shall be the first recorded, and the first mortgage recorded shall have preference.

available for any purpose against a third person who subsequently acquires the title to or an interest in or a lien upon the property, and that notice by him at the time, either actual or constructive or both, however complete it may be, of the existence and record of the mortgage, imparts no value or officacy to it."); *Strang v. Beach*, 11 Ohio St. 283, 288 (1860) (noting that "... such mortgages only as were signed, sealed, witnessed and acknowledged ... were entitled to be recorded ... and that none but mortgages *so* executed *and* delivered for record, or recorded, could have any effect whatsoever, either at law or equity, as to third parties, whether such third parties had notice of the defectively executed or unrecorded mortgage or not."); *Acacia on the Green Condo Assoc., Inc. v. Jefferson*, 47 N.E.3d 207, 212 (Ohio Ct. App. 2016) (because "execution of mortgages imbues different considerations," a defectively executed mortgage is invalid as to a subsequent lienholder even if the subsequent lienholder has actual knowledge); *Fifth Third Bank v. Farrell*, 2010-Ohio-4839, 2010 WL 3852223, at *10 (Ohio Ct. App. Sept. 28, 2010) (noting that while Fifth Third had actual knowledge of Countrywide's prior recorded mortgage, "because the Countrywide mortgage was defectively executed, it was not entitled to record and therefore can have no priority"); *Odita*, 822 N.E.2d at 826–27; *OneWest Bank v. Dorner*, 164 Ohio Misc.2d 63, 69–70, 953 N.E.2d 892 (2011).

One example of this rule of law applied to a lien priority dispute involving a defectively executed mortgage like the one held by PNC can be found in *Mortg. Elec. Regis. Sys. v. Odita*, 159 Ohio App.3d 1, 822 N.E.2d 821 (2004). In *Odita*, Mortgage Electronic Registration Systems ("MERS") held a first mortgage that was defectively acknowledged. *Id.* at 822. Following a foreclosure sale of the property to a new owner, a subsequent mortgage was recorded against the real property. *Id.* at 823. MERS's debt was not paid off with the proceeds of the foreclosure sale leading it to file a complaint against several parties including the subsequent mortgagee. *Id.* On appeal, the Franklin County Court of Appeals addressed whether MERS's first recorded but defectively executed mortgage could take priority over the validly recorded and executed lien of the subsequent mortgagee. *Id.* at 825. The court relied on Ohio recording statutes and a long line of cases holding that a defectively executed mortgage, like that held by MERS, could not take priority over a subsequent validly recorded mortgage. *Id.* Nevertheless, MERS argued that the subsequent mortgagee could not take priority because it had actual knowledge of the prior mortgage. *Id.* The Franklin County Court of Appeals rejected MERS's argument noting "significant authority" for the proposition that a defectively executed mortgage will be afforded no priority over a subsequent lien even when the subsequent mortgagee or lienholder had actual knowledge of the defectively executed mortgage. *Id.* at 826–27.

*Odita* and the other cases demonstrate the different treatment of lienholders under Ohio law. While notice (or a lack thereof) is imperative to obtaining bona fide purchaser status, notice is irrelevant to prioritizing a defectively executed mortgage with other liens. Instead, the important factor in the lien priority dispute is determining which lien is the first in time that strictly adhered to recording statutes. The rationale for treating lien priorities in this manner appears to be a public policy favoring those who comply with the recording statutes over those who do not. The earliest explanation of this rationale comes from a Supreme Court of Ohio case decided in 1847 which gave priority to

subsequent filed judgment liens over a defectively executed first mortgage:

> We can not aid him in correcting the error, which a little care would have prevented, by thrusting aside those who have equal equity, and the better legal claim. The complainant can not be preferred to the judgment creditors, without establishing a precedent that will in effect give more efficacy, in a numerous class of cases, to a negligently executed and defective mortgage, than to one in all respects executed in compliance with the law.

*White v. Denman*, 16 Ohio 59, 61 (1847). The court cannot ignore a century of Ohio case law that has grown out of this policy consistently holding that a subsequent properly perfected lien takes priority over a defectively executed but recorded mortgage despite either actual or constructive notice.[4]

### CONCLUSION

Ohio Rev. Code § 1301.401 has been interpreted to simply allow a defectively executed but recorded mortgage "to provide constructive notice to the world" of its existence and contents. *Messer*, 50 N.E.3d at 499. The statute contains no explicit language attempting to cure defects in the execution of a mortgage or change lien priorities and this court will not expand the statute through supposition. Given the limited scope of this constructive notice statute and the long line of Ohio cases holding that notice is not relevant to prioritizing a defectively executed mortgage with other liens, the court holds that Ohio Rev. Code § 1301.401 does not curtail the Trustee's ability to avoid PNC's defectively executed mortgage as a hypothetical judicial lien creditor pursuant to 11 U.S.C. § 544(a)(1).

The court would be remiss if it did not mention new legislation that may limit the significance of this holding and further suggests that the Ohio General Assembly has recognized the need for additional statutory provisions in order to change lien priorities involving defectively executed mortgages. Wholly revised language in Ohio Rev. Code § 5301.07, effective April 6, 2017, appears poised to alter the lien priority analysis discussed in this decision.[5]

4. Following the decision of the Ohio Supreme Court in *Messer*, the parties in that case returned to the bankruptcy court for a status hearing. The plaintiffs argued that although *Messer* precluded their claim as hypothetical bona fide purchasers under § 544(a)(3), it did not affect their claim under § 544(a)(1) as hypothetical judgment lien creditors, the same issue now before this court. In a limited decision without citation to Ohio case law, the bankruptcy court concluded that "[w]hether one claims the status of a hypothetical judgment lien creditor or a bona fide purchaser, constructive notice under state law precludes avoidance through Section 544 of the Code." *Messer v. JPMorgan Chase Bank, NA (In re Messer)*, 555 B.R. 656, 659 (Bankr. S.D. Ohio 2016). Because the fundamental purpose of recording statutes is to provide notice to third parties, this is not an illogical conclusion. *See McElroy*, 2005 WL 1364580 at *3 ("The purpose of the recording statutes is to put other lien holders on notice and to prioritize the liens[.]"). It is also logical to suppose there is no reason to treat lien creditors more favorably than bona fide purchasers for value. *See Kellner v. Fifth Third Bank (In re Durham)*, 493 B.R. 506, 516 n.4 (Bankr. S.D. Ohio 2013). Nevertheless, this court must respectfully disagree. As discussed in this decision, a long line of Ohio case law and subtle distinctions in the recording statutes compel a different result.

5. The new statutory language of Ohio Rev. Code § 5301.07, effective April 6, 2017, provides:

> (A) As used in this section, "real property instrument" means a deed, mortgage, and installment contract, lease, memorandum of trust, power of attorney, or any instrument accepted by the county recorder under section 317.08 of the Revised Code. (B)(1) When a real property instrument is delivered to and accepted by the county

Because revised Ohio Rev. Code § 5301.07 is not yet in effect, the court will refrain from discussing its potential impact leaving that for future determination.

For the reasons given, the court hereby denies the *Motion of PNC Mortgage Company to Dismiss and/or for Judgment on the Pleadings as to the Amended Complaint* [Adv. Doc. 42].

**SO ORDERED.**

recorder of the county in which the real property is situated, and is signed and acknowledged by a person with an interest in the real property that is described in the instrument, the instrument raises both of the following:

(a) A rebuttable presumption that the instrument conveys, encumbers, or is enforceable against the interest of the person who signed the instrument;

(b) A rebuttable presumption that the instrument is valid, enforceable, and effective as if in all respects the instrument was legally made, executed, acknowledged, and recorded.

(2) The presumptions described in division (B)(1) of this section may be rebutted by clear and convincing evidence of fraud, undue influence, duress, forgery, ·incompetency, or incapacity.

(C) When a real property instrument is of record for more than four years from the date of recording of the instrument, and the record shows that there is a defect in the making, execution, or acknowledgment of the instrument, the instrument and the record thereof shall be cured of the defect and be effective in all respects as if the instrument had been legally made, executed, acknowledged, and recorded. The defects may include but are not limited to the following:

(1) The instrument was not properly witnessed.

(2) The instrument contained no certificate of acknowledgment.

(3) The certificate of acknowledgment is defective in any respect.

(4) The name of the person with an interest in the real property does not appear

in the granting clause of the instrument, but the person signed the instrument without limitation.

(D) A real property instrument when delivered to the county recorder of the county in which the real property is situated and filed in the chain of title to the real property provides constructive notice to all third parties of the instrument notwithstanding any defect in the making, execution, or acknowledgment of the real property instrument.

(E) Nothing contained in this section operates to discharge the obligation to comply with all provisions of sections 5301.47 to 5301.56 and section 5301.332 of the Revised Code before the extinguishment, abandonment, or forfeiture of an interest in real estate as may be authorized by those sections.

(F) Except as otherwise provided in division (E) of this section, this section applies to all real property instruments notwithstanding any other provision of the Revised Code. To the extent that a conflict exists between this section and any other section of the Revised Code, including but not limited to section 1301.401 of the Revised Code, this section controls with respect to any matters addressed in this section.

(G) This section shall be given retroactive effect to the fullest extent permitted under Section 28 of Article II, Ohio Constitution. This section shall not be given retroactive effect if to do so would affect any accrued substantive right or vested rights in any person or in any real property instrument. 2016 Ohio Laws 156 (Am. Sub. S.B. No. 257).