RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 19a0035p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

IN RE: JERRY WAYNE OAKES, et al.,

_Debtors._

───────────────────────────────────

DONALD F. HARKER, III,

_Plaintiff-Appellee_,

_v._

PNC MORTGAGE COMPANY,

_Defendant-Appellant_.

No. 18-3194

On Appeal from the Bankruptcy Appellate Panel of the Sixth Circuit;
No: 17-8005—Marian F. Harrison, Daniel S. Opperman, and Tracey N. Wise,
Bankruptcy Appellate Panel Judges.

United States Bankruptcy Court for the Southern District of Ohio at Dayton;
Nos. 3:13-bk-33828; 3:14-ap-03014—Lawrence S. Walter, Judge.

Argued:  October 4, 2018

Decided and Filed:  March 5, 2019

Before:  GIBBONS, BATCHELDER, and ROGERS, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:**  Amelia A. Bower, PLUNKETT COONEY, Columbus, Ohio, for Appellant.  Walter Reynolds, PORTER WRIGHT MORRIS & ARTHUR LLP, Dayton, Ohio, for Appellee **ON BRIEF:**  Amelia A. Bower, PLUNKETT COONEY, Columbus, Ohio, for Appellant. Dianne F. Marx, RIESER & MARX, LLC, Dayton, Ohio, for Appellee.

———————————

## OPINION

———————————

JULIA SMITH GIBBONS, Circuit Judge.  The Bankruptcy Code provides trustees with numerous strongarm powers, including avoidance powers, that allow trustees to succeed to the rights of a judicial lien holder, execution creditor, and bona fide purchaser of real property.  In 2013, the Ohio legislature enacted legislation which offered further protections to mortgage-holders.  In analyzing that legislation, the Ohio Supreme Court found that recording a mortgage, even a defectively executed mortgage, provides constructive notice "to the world" of the existence of that mortgage.  Thus, a trustee may no longer avoid a defectively executed mortgage as a bona fide purchaser.  PNC Mortgage Company ("PNC") now requests that this court hold that a trustee similarly cannot avoid such a mortgage as a judicial lien creditor.  PNC argues that, because the Ohio Supreme Court's recent decision means that a trustee cannot avoid the PNC mortgage as a bona fide purchaser, the trustee as a lien creditor should be treated no differently.  We disagree and find that a bankruptcy trustee may avoid a deficiently executed mortgage when acting as a judicial lien creditor.

I.

Jerry Wayne and Jennifer Ann Oakes ("Oakes") filed a Chapter 7 bankruptcy petition on September 17, 2013.  Included in that petition was real property located at 41 Noelle Court, Franklin, Ohio, ("the property") which was valued at $160,000.  The Oakes had first acquired title on May 15, 2002. PNC holds the first mortgage lien on the property.

PNC filed a mortgage lien against the property in the sum of $144,000 on May 30, 2003.  That mortgage lien, however, was not executed in accordance with the laws of Ohio, as the Oakes' signatures were not acknowledged before a notary public.[1]  The parties agree that the acknowledgment clause in the mortgage is defective.

---

[1]Ohio law requires that "a . . . mortgage . . . shall be signed by the . . . mortgagor. . . . The signing shall be acknowledged by the . . . mortgagor . . . before a . . . notary public . . . who shall certify the acknowledgment and subscribe [his] name to the certificate of the acknowledgment."  Ohio Rev. Code Ann. § 5301.01 (2014).

In 2013, the Ohio legislature enacted legislation to offer further protections to mortgage holders. In relevant part, Ohio Rev. Code § 1301.401(C) provides that "Any person contesting the validity or effectiveness of any transaction referred to in a public record *is considered to have discovered that public record* and any transaction referred to in the record as of the time that the record was first filed with the secretary of state or tendered to a county recorder for recording."

Donald Harker was duly appointed as the Chapter 7 Bankruptcy Trustee in the Oakes proceeding. Harker sought to avoid the PNC mortgage because it was not properly recorded and the bankruptcy court stayed the proceeding, pending the Ohio Supreme Court's response to two certified questions in another matter. In *In re Messer*, the Ohio Supreme Court subsequently held that O.R.C. § 1301.401 applied to all recorded mortgages. 50 N.E. 3d 495 (Ohio 2016). The court further held that the statute acts to provide constructive notice of a recorded mortgage, even if that mortgage was deficiently executed. *Id.* at 445.

After the Ohio Supreme Court's decision, Harker filed an amended complaint and PNC filed an answer and a motion to dismiss and/or for judgment on the pleadings. The bankruptcy court construed PNC's motion as one for judgment on the pleadings and denied it, finding that the constructive notice provided by the Ohio law had no effect on a trustee's avoidance powers as a judicial lien creditor. On appeal, the Bankruptcy Appellate Panel affirmed.

II.

The parties do not dispute that we have jurisdiction to decide this appeal. Nevertheless, we have an independent obligation to inquire into and establish our subject-matter jurisdiction. *See Hitchcock v. Cumberland Univ. 403(b) DC Plan*, 851 F.3d 552, 557 (6th Cir. 2017) (citing *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006)). Ultimately, we find that we do.

At the "trial" stage of this bankruptcy dispute, the bankruptcy court determined "that Ohio Rev. Code § 1301.401 does not curtail the Trustee's ability to avoid PNC's defectively executed mortgage as a hypothetical judicial lien creditor pursuant to 11 U.S.C. § 544(a)(1)," and therefore "denie[d] the Motion of PNC Mortgage Company to Dismiss and/or for Judgment on the Pleadings as to the Amended Complaint." S.D. Ohio Bankr. Dkt #3:14-ap-03014, R. 48 at 15-16.

Ordinarily, the *denial* of either a motion to dismiss or a motion for judgment on the pleadings is *not* a final appealable order. Because the bankruptcy court construed PNC's motion as one for judgment on the pleadings and denied it as such, we can consider this the denial of a defendant's motion for judgment on the pleadings, omitting the "motion to dismiss" alternative. PNC appealed that denial to the Bankruptcy Appellate Panel (BAP), which "granted leave to appeal to resolve a split in the Ohio bankruptcy courts." Sixth Cir. Dkt # 17-8005, R.23 at 2. The BAP expressly "affirmed the bankruptcy court's order denying PNC's motion for judgment on the pleadings," *id.*, holding "that, pursuant to applicable Ohio law at the time the case was filed, the Trustee in his role as hypothetical judicial lien creditor takes priority over PNC's defective mortgage . . . [and] may avoid the mortgage pursuant to 11 U.S.C. § 544(a)(1)," *id.* at 10.

Once again, this ruling, which is merely the denial of a motion for judgment on the pleadings (being only an affirmance of that same decision), would ordinarily *not* be a final appealable order and we would lack jurisdiction. But PNC appealed here, asserting jurisdiction vaguely, and Trustee Harker responded only that PNC's "characterization of jurisdiction is not disputed." This, of course, does not settle the matter.

But, upon our inquiry, we conclude that we do have jurisdiction based on the bankruptcy court's ruling in favor of the Trustee on this issue, which effectively rendered the judgment in PNC's case "final."

> [An] order ending a proceeding in a bankruptcy case is immediately appealable if the order alters the status quo and fixes the rights and obligations of the parties or alters the legal relationship among the parties. This *interpretation of finality in bankruptcy cases* determines the scope of the district court['s] and BAP's authority to hear appeals from final judgments, orders, and decrees under [28 U.S.C.] § 158(a)(1) as well as our authority to hear appeals from all final decisions, judgments, orders, and decrees of bankruptcy judges entered by the district court and BAP under § 158(d)(1), which are governed by the same constraints.
>
> The rules are different in bankruptcy because a bankruptcy case involves an aggregation of individual controversies . . . [so] certain bankruptcy orders are appealable even if they do not conclude the entire bankruptcy case, and thus are technically interlocutory. [Because] § 158 provides jurisdiction over orders in bankruptcy cases that alter the legal relationships among the parties, . . . [courts

look] to whether the bankruptcy court's decision: (1) resolves and seriously affects substantive rights and (2) finally determines the discrete issue to which it is addressed in determining whether a particular bankruptcy court order is final. When the district court (or BAP) affirms or reverses such a decision, [it is] considered [] to be final and immediately appealable.

*In re Gugliuzza*, 852 F.3d 884, 893 (9th Cir. 2017), *relying on Bullard v. Blue Hills Bank*, 135 S.Ct. 1686 (2015) (emphasis added; quotation marks, citations, and footnotes omitted); *accord In re Cyberco Holdings Inc.*, 734 F.3d 432, 436 (6th Cir. 2013) (decided before *Bullard*).

Therefore, we have subject-matter jurisdiction to decide this appeal.

III.

A.

In reviewing appeals from the Bankruptcy Appellate Panel, we review legal determinations *de novo*, and factual determinations for clear error on the part of the bankruptcy court. *In re Barrett*, 487 F.3d 353, 358 (6th Cir. 2007); *In re Tirch*, 409 F.3d 677, 680 (6th Cir. 2005). A court's decision that a trustee has strong-arm powers under § 544(a)(1) is a legal determination, which is reviewed *de novo*. *Simon v. Chase Manhattan Bank* (*In re Zaptocky*), 250 F.3d 1020, 1023 (6th Cir. 2001) (citing *Corzin v. Fordu* (*In re Fordu*), 201 F.3d 693, 696 n.1 (6th Cir. 1999)).

When reviewing the denial of a defendant's motion for a judgment on the pleadings, we review the complaint in the light most favorable to the plaintiff, accepting all of the complaint's well-pled factual allegations as true to determine whether the plaintiff states a claim for relief. *In re McKenzie*, 715 F.3d 404, 412 (6th Cir. 2013). Though the facts alleged in the complaint need not be detailed, they must be sufficient to raise a right to relief above the speculative level. *Id.*

B.

Bankruptcy trustees, in exercising their avoidance powers, may succeed to the rights of judicial lien creditors, execution creditors, and bona fide purchasers. Relevant to this case are the Bankruptcy Code's provisions concerning avoidance powers as a bona fide purchaser or as a judicial lien creditor. Section 544 of the code provides, in relevant part:

(a) *The trustee shall have*, as of the commencement of the case, and without regard to the knowledge of the trustee or any creditor, *the rights and powers of*, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by . . .

(1) *a creditor* that extends credit to the debtor at the time of the commencement of the case, and *that obtains, at such time and with respect to such credit, a judicial lien* on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

. . .

(3) *a bona fide purchaser* of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544 (emphasis added).  The trustee acting as a judicial lien creditor is deemed to have perfected his interest as of the date of the filing of the bankruptcy.  *Palmer v. Washington Mut. Bank* (*In re Ritchie*), 416 B.R. 638, 643 (B.A.P. 6th Cir. 2009).  One of the powers of the trustee acting as a judicial lien creditor "is the ability to take priority over or 'avoid' security interests that are unperfected under applicable state law." *Rogan v. Litton Loan Serv., L.P.* (*In re Collins*), 456 B.R. 284, 293 (B.A.P. 6th Cir. 2011); *Rogan v. Bank One, N.A.* (*In re Cook*), 457 F.3d 561, 564 (6th Cir. 2006).  Because the property at issue here is in Ohio, Ohio state laws govern. *Treinish v. Norwest Bank, MN, N.A.* (*In re Periandri*), 266 B.R. 651 655 (B.A.P. 6th Cir. 2001); *In re Zaptocky*, 250 F.3d at 1024.

Previously in Ohio, a bankruptcy trustee could avoid defectively executed mortgages by acting as a bona fide purchaser without actual notice.  *See, e.g.*, *Rhiel v. Central Mortg. Co.* (*In re Kebe*), 469 B.R. 778 (Bankr. S.D. Ohio 2012).  In 2013, however, the Ohio legislature revised the state law.  Ohio Rev. Code § 1301.401, effective March 27, 2013, now provides:

(A) For purposes of this section, "public record" means either of the following:

(1) Any document described or referred to in section 317.08 of the Revised Code;

(2) Any document the filing or recording of which is required or allowed under any provision of Chapter 1309. of the Revised Code.

(B) The recording with any county recorder of any document described in division (A)(1) of this section or the filing or recording with the secretary of state

> of any document described in division (A)(2) of this section shall be *constructive notice to the whole world* of the existence and contents of either document as a public record and of any transaction referred to in that public record, including, but not limited to, any transfer, conveyance, or assignment reflected in that record.
>
> (C) *Any person contesting the validity or effectiveness of any transaction referred to in a public record is considered to have discovered that public record* and any transaction referred to in the record as of the time that the record was first filed with the secretary of state or tendered to a county recorder for recording.

Ohio Rev. Code § 1301.401 (emphasis added).

In considering this statute recently, the Ohio Supreme Court found that, under § 1301.401, recording a mortgage provides constructive notice "to the world" of the existence of that mortgage, even if the mortgage is defectively executed. *In re Messer*, 50 N.E.3d at 498-99. In *In re Messer*, as in this case, the notary acknowledgement on the mortgage was left blank. *Id.* at 496. The defective mortgage was subsequently recorded. *Id.* The petitioners argued that they were able to avoid the defective mortgage as bona fide purchasers. In relevant part, the petitioners argued that they could avoid the mortgage because it had been defectively executed. The court found, however, that because the statute did not specify whether the mortgage must be properly executed or free from defects, a deficiently executed mortgage "provides constructive notice to the world of that mortgage." *Id.* at 498-99.

With the Ohio Supreme Court's interpretation of Ohio's revenue code, a bankruptcy trustee can thus no longer avoid mortgages as a bona fide purchaser. The constructive notice provision of § 1301.401 subverts a bona fide purchaser's ability to claim lack of notice.

C.

Lack of notice is central to the avoidance powers of a bona fide purchaser. In the context of single-family mortgage foreclosures, a bona fide purchaser is defined by 12 U.S.C. § 3752 as being "a purchaser for value in good faith and without notice of any adverse claim, and who acquires the security property free from any adverse claim." Further, Black's Law Dictionary defines a bona fide purchaser as being:

Someone who buys something for value without notice of another's claim to the property and without actual or constructive notice of any defects or infirmities, claims, or equities against the seller's title; one who has in good faith paid valuable consideration for property without notice of prior adverse claims.

Black's Law Dictionary (10th ed. 2014).

Ohio laws further support the importance of lack of notice to a bona fide purchaser's claim. Before Ohio revised its laws in 2013, a trustee could not stand in the shoes of a bona fide purchaser if he had actual notice of the properly recorded mortgage. *See, e.g. In re Zaptocky*, 250 F.3d at 1032 ("Because Chase's mortgage was properly recorded before the Zaptocky's filed their bankruptcy petition, the Trustee cannot, under Ohio law, stand in the shoes of a bona fide purchaser without notice."). Decisions from the Ohio Supreme Court further require that a bona fide purchaser must be without notice. The court has previously explained that, "unless the rule is changed by legislation, a bona fide purchase involves three elements: (1) a valuable consideration, (2) good faith and (3) absence of notice." *Shaker Corlett Land Co. v. City of Cleveland*, 41 N.E.2d 243, 246 (Ohio 1942); *see also Wayne Bldg. & Loan Co. of Wooster v. Yarborough*, 228 N.E.2d 841 (Ohio 1967) ("There seems to be little question that a mortgagee is entitled to the protection of a bona fide purchaser, if he gives value without notice of prior equities.") (citing *Minor v. Wallace*, 10 Ohio 403, 405 (1841)).

Thus, it is clear that after the 2013 revisions and the Ohio Supreme Court's decision in *In re Messer*, it is no longer necessary that the mortgage be properly executed to take priority over the interest of a subsequent trustee acting as a bona fide purchaser. The recording of the deficiently executed mortgage is enough.

## D.

Notice, however, is not relevant to the status of a judicial lien creditor. "Neither the Bankruptcy Code nor Ohio law requires that a judgment creditor have the same attributes of a bona fide purchaser as it pertains to notice of a prior interest; neither requires a judgment creditor to lack notice of an unrecorded or defective lien in order to obtain a superior lien on a judgment debtor's property." *Stubbins v. Wells Fargo Bank, N.A.* (*In re Gibson*), 395 B.R. 49, 57 (Bankr. S.D. Ohio 2008). In Ohio, a defectively executed mortgage is invalid to a subsequent lienholder

"even if the subsequent mortgagee-lienholder had actual knowledge of the prior defectively executed mortgage." *Acacia on the Green Condo. Ass'n, Inc. v. Jefferson*, 47 N.E.3d 207, 212 (Ohio Ct. App. 2016); *see also Fifth Third Bank v. Farrell*, 2010 WL 3852223 at *10 (Ohio Ct. App. 2010) ("[W]e find that *while Fifth Third had actual knowledge of the Countrywide mortgage*, because the Countrywide mortgage was defectively executed, it was not entitled to record and therefore can have no priority.") (emphasis added).

Ohio's recently revised laws and the state supreme court's decision interpreting them make it clear that a defectively executed mortgage still provides notice to other potential subsequent bona fide purchasers and judicial lien creditors. According to § 1301.401 and *Messer*, 50 N.E.3d at 499 (¶ 13), the recording of a mortgage—even a defectively executed mortgage—provides constructive notice, which affects the rights of bona fide purchasers. In fact, the defectively executed mortgage provides such notice to "all the world."

Still, PNC confuses the effect of the revised law. Under Ohio law, notice—whether constructive or actual—does not affect *the priority* of recordings. That is, regardless of notice, a defectively executed mortgage is not "perfected" so it does not trump a subsequently perfected lien. *White v. Denman*, 16 Ohio 59, 61 (1847) ("The complainant cannot be preferred to the judgment creditors without establishing a precedent that will in effect give more efficacy, in a numerous class of cases, to a negligently executed and defective mortgage than to one in all respects executed in compliance with the law."); *see also Citizens Nat'l Bank v. Denison*, 133 N.E.2d 329, 333 (Ohio 1956) ("[A] defectively executed mortgage when recorded does not establish a lien with priority over subsequently recorded mortgages properly executed."); *Mortg. Elec. Registration Sys. v. Odita*, 822 N.E.2d 821, 826 (Ohio App. 2004) ("In Ohio, a defectively executed mortgage will be afforded no priority over subsequent legal interests or liens, even where the subsequent legal interests or liens were acquired with actual notice of the mortgage.") (editorial marks omitted) (quoting Dunaway, Law of Distressed Real Estate (2004), § 78:3, Effect of Defectively Executed Mortgage); *Fifth Third*, 2010 WL 3852223, at *7 ¶ 60 ("[P]ursuant to *Citizens Natl. Bank*, [] a defectively executed mortgage without proper acknowledgement of the mortgagor by a notary will not be entitled to priority over a subsequent, properly recorded mortgage.").

Though § 1301.401 provides that a recorded mortgage, even if defectively executed, gives notice to the world, it does not make a defectively executed mortgage properly executed. Such notice is irrelevant in considering whether the Trustee may avoid PNC's mortgage as a judicial lien creditor, as Ohio law makes clear that a judicial lien creditor may still avoid a defectively executed mortgage, even if he has notice of such mortgage.[2] Thus, PNC recorded its mortgage but, because the mortgage was "defectively executed," PNC did not "perfect" that mortgage, whereas the Trustee, as a judicial lien creditor, "perfected" his lien on the property upon the Oakes's filing of bankruptcy, *see In re Ritchie*, 416 B.R. at 643. Therefore, under Ohio law, because the Trustee was the first to record a perfected lien, the Trustee's lien has priority— the Trustee cuts ahead of PNC in line.

Because the Trustee in his role as a hypothetical judicial lien creditor was the first to perfect his lien on the property, his lien has first priority and he may, pursuant to 11 U.S.C. § 544(a)(1), avoid subsequent competing liens or mortgages, such as PNC's defectively executed mortgage. Thus, the Trustee, acting as a judicial lien creditor, is still able to avoid PNC's mortgage, even with notice of the defectively-executed mortgage under § 1301.401. Such notice is irrelevant for his status as a judicial lien creditor.[3]

## IV.

For the reasons stated, we affirm the Bankruptcy Appellate Panel's upholding of the bankruptcy court's denial of PNC's motion for judgment on the pleadings.

---

[2]Since the Ohio Supreme Court decision in *In re Messer*, the Ohio legislature has once again addressed the effects of recording instruments. With Ohio Rev. Code Ann § 5301.07 (2017), the state legislature decided that filing a mortgage creates a rebuttable presumption that the mortgage is "valid, enforceable, and effective as if in all respects the instrument was legally made, executed, acknowledged, and recorded." Further, a defectively executed mortgage shall be considered cured of any defect when a real property is of record for more than four years since the defective execution. *Id.* These changes suggest that the Ohio legislature did not understand itself to have been changing lien priorities when it revised its laws in 2013 with § 1301.401.

[3]PNC argues that the effect of notice on a judicial lien creditor should be understood as being analogous to the doctrine of *lis pendens*. Under Ohio law, *lis pendens* provides: "When a complaint is filed, the action is pending so as to charge a third person with notice of its pendency. *While pending, no interest can be acquired by third persons in the subject of this action, as against the plaintiff's title*." Ohio Rev. Code § 2703.26 (emphasis added). Because there was no mortgage foreclosure action pending in this case, this case does not concern the doctrine, and we need not decide how Ohio's revised notice law might affect the doctrine. *See, e.g. In re Durham*, 498 B.R. 506, 515 (Bankr. S.D. Ohio 2013) ("Of critical significance to this case is the fact that the question of *lis pendens* did not arise in *Gibson* and was not discussed by the court.").